274 So.2d 646

**Eddie WEEKS, alias**

v.

**STATE.**

**5 Div. 90.**

Court of Criminal Appeals of Alabama.

March 13, 1973.

Maye & Melton, Opelika, for appellant.

William J. Baxley, Atty. Gen., and J. Mason Davis, Birmingham, Special Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of resisting a lawful arrest. The jury assessed a fine of $450.00, and the trial judge in addition thereto sentenced appellant to hard labor for Lee County for six (6) months. He was also sentenced to one hundred and forty (140) days hard labor in lieu of the fine and an additional term of twenty-four (24) days for non payment of the court costs at the rate of three dollars ($3.00) per day, making a total of eleven (11) months and fourteen (14) days servitude. Sentence was suspended pending appeal and the appeal bond was fixed at five thousand dol-

lars ($5,000.00) and he is now free on bond.

After midnight on June 13, 1971, Ernest G. Gilmore, a police officer of Phenix City, Alabama, and his partner, Jerry Wayne Sharpe, were on patrol on Highway 431 between Phenix City and Opelika when a 1959 Pontiac automobile passed them traveling at a very high rate of speed going in the direction of Opelika. The officers immediately gave chase with the siren on and blue light working. They got up to a speed of 110 miles per hour in an attempt to overtake the fleeing Pontiac. When they got to Smith's Station, being then in Lee County, the Pontiac attempted to make a right turn on to another paved road and the car stalled. The officers pulled their car partially in front of the stalled car being within three (3) feet of the front end, got out and started to the Pontiac. They were dressed in uniform and their car was a marked car with the insignia on the doors on both sides. Their blue light was still on. As they approached the car they observed a male and female in the front seat. Appellant was identified as the driver. Just before they got to the car appellant cranked the Pontiac and drove directly at the officers in an attempt to run them down. The officers jumped out of the way and shouted, "Halt, Stop, Police". Appellant put the car in reverse and after backing a short distance again drove forward toward the officers. The officers again jumped to safety and were still shouting "Halt, Police". Appellant turned his car around and headed in the direction of Phenix City. One of the officers pulled his revolver and shot the two left tires and two other shots struck the left fender and another part of the vehicle. The officers got in the patrol car and again gave chase with siren on and blue light revolving. They noticed that the two shot tires were flat, the tires came off and appellant drove on the rims emitting sparks on down the highway. After a mile and a half, appellant lost control and the car came to a stop.

Officer Sharpe got out and approached the driver's side of the Pontiac. Appellant opened the door and reached for the officer bringing his hands up both sides of the officer from his knees to his shoulders and they began to tussle. During the tussle, Gilmore saw Sharpe's holster was empty and told him his pistol was missing and, while they were still tussling, Gilmore pulled his pistol and struck appellant on the head, knocking him to his knees. While in this subdued position, other officers from the Lee County Sheriff's Department arrived and found Sharpe's pistol on the ground about three feet from appellant.

An ambulance was summoned and carried appellant to the hospital in Phenix City. After he was treated the officers carried him to jail and charged him with driving while intoxicated having smelled strongly the odor of alcohol on appellant.

We are urged to reverse this case because of the excessive brutal-force used by the officers in arresting appellant for a misdemeanor, and the actions and conduct of the trial court in "heckling" appellant's counsel in the presence of the jury and threatening to put him in jail for contempt.

 An officer may arrest any person without a warrant, on any day and at any time, for any public offense committed in his presence, and is not under any duty to inform the person arrested for an offense committed in his presence of the nature of the charge. Lakey v. State, 24 Ala.App. 273, 134 So. 455; Williams v. State, 33 Ala.App. 304, 35 So.2d 562. In all cases of attempted legal arrest, an officer is under a duty to act aggressively and go forward in perfecting the arrest. He may repel force with force and need not give back.

 This was a "hot pursuit" case, and the events took place so rapidly and under such circumstances that the officers did not have time to do more than to say "Halt, Police, Stop", and jump to safety. When appellant's car was finally stopped and the officer approached his car, he had

the right to act on the appearances of things taken in the light of appellant's attempt to "run them down" with his vehicle on two occasions just a few minutes prior to the arrest. The officer who struck appellant on the head while he was struggling with the other officer had a right to take immediate action to subdue appellant armed with the knowledge that this officer's pistol was not in his holster. He had a right to assume the pistol was in the possession of appellant and the slightest delay on his part could have been disastrous. The officer's pistol was found on the ground within three feet of appellant after he was subdued and handcuffed. The force used to perfect the arrest was not disproportionate to the exigencies of the moment.

■ Appellant claims he did not know that he was being chased by officers of the law, did not hear a siren and did not see the blue flashing light on the patrol car, and did not observe the officers were in uniform or in an official police car. He claimed he was not driving in excess of fifty (50) miles per hour being the lawful speed for nighttime driving. His version of the occasion strains credulity in the light of the testimony of the officers. The jury chose to believe the officers and this they had every right to do. Tarwater v. State, 16 Ala.App. 140, 75 So. 816.

The officers testified that they had no intention to shoot appellant in order to stop him and did not shoot at his automobile for that purpose. The two bullet holes found on the car tend to bear this out. If, however, appellant had been killed the homicide might have been murder.

> "Generally speaking, in misdemeanor arrests it would be murder to kill the accused when he is fleeing from arrest, even though he cannot be otherwise taken." Shine v. State, 44 Ala.App. 171, 204 So.2d 817; Holcomb v. State, 35 Ala.App. 528, 50 So.2d 165.

This brings us to a consideration of the second contention of appellant that should work a reversal of the case. This occurred during the cross-examination of Officer Sharpe, a witness for the prosecution. From the record:

> "Q. All right. Now, I'm not talking about that time. I'm talking about the occasion that you had occasion to face Mr. Weeks after he got out of his car the second time his car was brought to a halt.

> "A. Yes, sir. This is the incident when he—

> "Q. All right. Just answer my questions, please, sir.

> "MR. WRIGHT: He's trying to—

> "THE COURT: Mr. Melton, he's been over that a dozen times.

> "MR. MELTON: No, sir, he has not.

> "THE COURT: All right. Go ahead, then. Don't call me a liar now.

> "MR. MELTON: Judge, I'm asking—

> "THE COURT: You have not. If you call me a liar, I'll put you in jail.

> "MR. MELTON: No, sir, I'm not calling you a liar, I just want to get the facts straight—

> "THE COURT: Well I think he's been over it a half a dozen times or several times and you said he has not.

> "MR. MELTON: Just this particular point, Judge.

> "THE COURT: All right. Go ahead. Go ahead, but you better watch your step. Call me a liar and you'll wind up in jail down here for a week or so.

> "MR. MELTON: Yes, sir.

> "THE COURT: All right."

The principles controlling in matters of this kind were best expressed by Judge Bricken in Dennison v. State, 17 Ala.App. 674, 88 So. 211, wherein it is stated:

> "The trial judge, as a natural consequence of his position and the many duties devolving upon him, is necessarily vested with much discretion in the con-

duct of the trial of causes, and, unless it clearly appears that there has been an abuse of this discretion, appellate courts will not interfere to control such discretion, but will presume that one occupying so important a position as that of circuit judge will accord to all litigants in his court the fair and impartial trial provided for in the Constitution of this State. That a trial judge wields a great influence upon the jury cannot be questioned, for it is their duty to follow his instructions as to the law. So, whenever he expresses an opinion on any disputed fact, or of the character of a witness, or compliments one attorney at the expense of another, or uses language which tends to bring an attorney into contempt before the jury, or uses any language or makes any intimation which tends to prejudice them, he commits an error of law, which would, of necessity, effect a reversal of the judgment and a remandment of the cause. * * *"

■ In the above colloquy, the trial judge used the word "liar" three times and threatened to put counsel for appellant in jail "for a week or so". We do not perceive from the record that appellant's counsel's statements called for such a stinging rebuke by the trial court. He was only attempting to get the facts straight before the jury. However, we are forbidden to further treat this contention of error for the reason that there was no objection or exception reserved to the action of the court. Woodard v. State, 253 Ala. 259, 44 So.2d 241; Neal v. State, 36 Ala.App. 156, 54 So.2d 613; Hamilton v. State, 270 Ala. 184, 116 So.2d 906.

This case is due to be and is hereby affirmed.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., concurs in result.