**Jimmy Lee LOGAN,
Petitioner-Appellant,**

v.

**Walter L. CAPPS, Warden, Draper
Prison, et al.,
Respondents-Appellees.**

**No. 74–4222.**

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1976.

**938**

John S. Glenn, Opelika, Ala. (Court-appointed), for petitioner-appellant.

William J. Baxley, Atty. Gen., David W. Clark, Rosa Gunter Hamlett, Asst. Attys. Gen., J. Brent Thornley, Montgomery Ala., for respondents-appellees.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Jimmy Lee Logan seeks reversal of the district court's denial of his petition for habeas corpus, alleging that his imprisonment on an Alabama rape conviction violates the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

The following factual summary is adapted from the magistrate's report entered in the district court: On the night of May 19, 1971, Lucia Halbert Penland was dragged into the bushes near her home in Auburn, Alabama, and raped. Because of the darkness and her successful attempt to feign unconsciousness, she was unable to identify or count her assailants. She assumed there were four attackers because three acts of forcible sexual intercourse were completed, and, additionally, someone "lay on top of her" but did not achieve penetration.

On May 25, 1971, Lieutenant Frank DeGraffenried ' of the Auburn Police Department executed an affidavit before a magistrate alleging that he had probable cause to arrest Jimmy Lee Logan for the crime.[1] A warrant for Logan's arrest issued and Logan was promptly arrested. He remained in jail continuously from the date of his arrest to the date of his trial. Sometime in July or August 1971, he allegedly confessed to a cellmate, Charlie Parker. A preliminary hearing was held August 30, 1971. Jimmy Lee Logan was indicted on the rape charge September 21, 1971.

At trial, the state's case consisted of the testimony of the victim, the detective lieutenant to whom she made immediate complaint, the examining doctor, a juvenile who admitted having participated in the assault on the victim, and Charlie Parker, the cellmate. The juvenile, Willie Scott, testified that both he and petitioner participated in the assault and that petitioner was the second of the other three participants who actually raped the victim. Parker testified that

---

1. The affidavit's operative language was limited to: " . . . that he has probable cause for believing and does believe that Jimmy Lee Logan, alias, forcibly ravished . . . a woman . . . ."

while they were alone in their cell Logan confessed to committing the crime. Logan was then 16 years old. His intellect had been assessed in the "dull-normal" range.

Jimmy Lee Logan offered an alibi defense, i. e., that he was at home with his family watching television at the time of the rape. This defense was supported by members of his family. The defense also offered the testimony of several prisoners to the effect that on the day before Logan's preliminary hearing Charlie Parker stated that he had been offered money to testify that Logan had confessed to him and that Parker further stated that he did not want money but instead wanted the charge against himself dropped.[2] The defense offered the testimony of another admitted participant in the rape, James Foster. He testified that only three persons attacked Miss Penland and that Jimmy Lee Logan was not present. With respect to Logan's alibi, Foster testified that he saw Logan on the day of the rape and that Logan "said he was going home when he left us." Finally, Logan testified that he was at home at the time of the rape and that he did not make the confession to which Charlie Parker had testified.

In rebuttal, the state called the city detective who had allegedly offered Parker money to testify. He denied offering Parker money or anything else for his testimony. At the conclusion of this testimony, in announcing that he would not cross-examine the detective, counsel for Logan stated in the presence of the jury that it was not the theory of the defense that the officers actually offered Parker money but only that Parker had said so because "Parker would say anything." After deliberating for 54 minutes, the jury returned a verdict of guilty.

On direct appeal, Logan contended that the conclusory affidavit which supported the warrant issued for his arrest failed to meet constitutional standards.[3] Because the arrest was illegal and the ensuing imprisonment tainted, he asserted the confession was inadmissible as the "fruit of the poisonous tree" under *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Finally Logan contended that the confession was the only corroboration for the accomplice testimony of Willie Scott.[4]

The Supreme Court of Alabama ruled that Logan's confession to his cellmate Parker was admissible, reasoning

> But here, the confession was made to a cellmate and was admitted after a proper predicate had been laid as to its voluntariness. There is no evidence or inference therefrom that any officer was present or heard the confession or that cellmate Parker was a "plant" or undercover agent of any officer. So there was no "poisonous tree" and no "fruit" of any illegal search or seizure or custodial interrogation.

*Logan v. State,* 291 Ala. 497, 282 So.2d 898, 900 (1973). The conviction was affirmed. Chief Justice Heflin filed a separate opinion concurring in the result because the confession was not made to law enforcement personnel. Justice Bloodworth dissented, reasoning that the burden was on the state to demonstrate that the confession was not caused by the illegal detention. He pointed out that this issue had never been reached by the trial court because of that court's erroneous ruling that the affidavit was sufficient and the detention not illegal.

Logan applied to the United States District Court for a writ of habeas corpus. Upon reference, the magistrate recommended relief be denied because

---

**2.** At the time of the alleged confession, Parker was being held under a warrant charging him with assault with intent to murder. Before testifying in Logan's trial Parker was indicted for simple assault and battery.

**3.** He relied upon *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503

(1958); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

**4.** Alabama law requires such corroboration to make accomplice testimony admissible. Tit. 15, § 307, Ala.Code (1958).

(1) Logan's alibi defense and the attack on his confession to Parker as the product of an illegal detention were impermissibly inconsistent; (2) the confession could not be the product of illegal detention because the totality of the circumstances showed it to be a voluntary act; and (3) even if the confession was produced by the illegal detention it would not serve the deterrent purpose of the exclusionary rule to exclude it since the arrest was made by police personnel acting in good faith. The district court denied relief, finding that the confession was voluntarily made because the connection between the illegal arrest and subsequent statement had "become so attenuated as to dissipate the taint" under *Wong Sun v. United States*, 371 U.S. at 491, 83 S.Ct. at 419, *supra*, and *United States v. Owen*, 492 F.2d 1100 (5th Cir. 1974), *cert. denied*, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1975).

■ The majority ruling of the Alabama Supreme Court and the holding of the district court below rested on a premise that improperly commingled Fourth and Fifth Amendment issues. A showing that Logan's confession was voluntary, in the sense it was not compelled within the Fifth Amendment's prohibition, and a showing that his confession was not the product of the illegal detention proscribed by the Fourth Amendment, are not the same thing. This teaching of *Wong Sun v. United States, supra*, has been interpreted in subsequent Supreme Court decisions, particularly *Morales v. New York*, 396 U.S. 102, 90 S.Ct. 291, 24 L.Ed.2d 299 (1969), and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

■ The district court could conclude Alabama properly determined on a sufficient record that Logan's statement to Parker was voluntary and admission of the statement did not transgress the Fifth Amendment. However, Alabama has never considered whether the acknowledgement of guilt Logan made to Parker resulted from his illegal detention; thus the district court erred in summarily denying habeas relief. On the present appeal that latter, largely factual, determination cannot be made on the record as developed in this case to date.

■ We do not know Logan's detention was illegal. We only know his arrest appears to have been based on a warrant based on an insufficient affidavit. Alabama permits affidavits to be supplemented by facts presented under oath to the magistrate at the time a warrant issues. If Alabama can show that adequate sworn information was in fact presented, it should be allowed to do so. Assuming *arguendo* that the arrest warrant was illegal and the consequent detention resulted from it, the record suffers from other vital omissions. It does not clearly disclose the length of the detention prior to confession. We do not know the details of that incarceration, *e. g.*, whether Logan ever challenged or complained about his imprisonment because of the illegal arrest; whether Logan was permitted to have contact with other prisoners or was largely segregated with Parker; the standard of treatment accorded Logan individually and as compared to other prisoners; whether Logan had counsel during any part of the detention time and, if so, how frequently that counsel met with him; or whether officials interrogated Logan about the details of the crime during his imprisonment. All of these factors and perhaps more could have a bearing on proper resolution of the Fourth Amendment issue.

■ Since the case must go back for this development, we note that the burden is on the state to show that the illegality of arrest and detention had become so attenuated by the time Logan allegedly confessed to Parker that its taint was dissipated and that such illegality played no part in causing Logan to confess.

To determine whether official illegality caused one whose liberty is unlawfully denied to incriminate himself, the district court should parallel the analytical

procedure set out in *Wong Sun, Morales,* and *Brown.* The specific concepts and criteria discussed in those cases offer much assistance in determining how the causal relationship between the illegal detention and the giving of the confession is to be decided. We note, however, the striking factual dissimilarities between those cases and the one before us as to the length of time between the arrest and the alleged confession and the person to whom it was made. In *Wong Sun, Morales, Brown,* and similar cases, confessions were made *within hours of the arrest* and *directly to law enforcement officials.* Since neither circumstance obtains here, the use of the exact criteria set out in these decisions [5] could misdirect the principal inquiry rather than serve as an accurate guide. The heart of the matter is whether the confession was acquired because of the illegal arrest and detention or whether the decision on Logan's part to tell all was a decision he made not just voluntarily but independently of his condition of illegal imprisonment. *Morales* requires that no significant facts relevant to this inquiry be shrouded in ambiguity. Since some factors that could be controlling are absent and others are in doubt, the judgment of the district court is vacated and the case remanded to that court for development of such facts as that court may deem necessary and an application of Fourth Amendment review standards in a manner not inconsistent with this opinion. Nothing in this opinion is intended to require or even intimate what the outcome of this inquiry on remand should be.

Logan's claim that Alabama law required corroboration of the accomplice testimony of Scott could be mooted if his confession is admissible. We pretermit that issue here.

Vacated and remanded.

---

5. Especially the criteria discussed in *Brown v. Illinois, supra,* 422 U.S. at 602–605, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 426–427.