JAMES E. SMITH, III, Circuit Judge.
Willie L. Gaskin, a twenty year old man, was convicted in Tuscaloosa County Circuit Court of Murder in the First Degree and sentenced to life imprisonment.
I
On the night of November 1, 1975, at approximately 9:20 p. m., the Appellant and an accomplice, Limuel Alexander, a twenty-six year old male, went to the Buzz Service Station on Highway 82 in the City of Northport, Tuscaloosa County, Alabama, for the purpose of robbing the service station attendants. The two employees, Elgin Herring and Paul W. Boatner, were seated inside a small office at the time the Appellant and his accomplice arrived at the service station. As the Appellant and his accomplice entered the service station office, Herring reached into his shirt pocket, whereupon, the Defendant’s accomplice shot Paul W. Boatner and Elgin Herring with a pistol. This shooting resulted in the death of Paul W. Boatner.
It appears from the record that the Appellant and his accomplice had arrived at the scene of the crime in the Defendant’s automobile, which was parked on a dirt road some 100 to 150 feet behind the service station. That the Appellant and his accomplice approached the service station office from the rear, and after the shooting, fled by the same route to the automobile. The Appellant and his accomplice fled the scene in the Appellant’s automobile.
At approximately 9:30 p. m., Officer Lewis Brown, who was patrolling alone in a Northport police automobile, received a radio call from the Northport Police Department Dispatcher, directing him to proceed to the Buzz Service Station. Officer Brown testified that the message he received from the Dispatcher was garbled, and he could not determine the exact nature of the trouble at the Buzz Service Station. He stated that the Dispatcher seemed to be hysterical, and he did not know exactly what the problem was at the Buzz Service Station. En-route to the Buzz Service Station on 30th Avenue, a two lane dirt road, Officer Brown was driving his patrol car at a speed of approximately 70 to 80 miles per hour, with siren on, and his blue lights flashing. He met the Appellant’s automobile, which approached and passed him at a speed of approximately 60 or 70 miles per hour. Officer Brown testified that the Appellant’s car came at him “like it was going to run me off the road.” Officer Brown turned his patrol car around and chased the Appellant for some few blocks, ultimately bringing the Appellant to a stop near the Hole-man Lumber Company. After the Appellant’s vehicle stopped, Officer Brown pulled his patrol car up near the rear of the Appellant’s vehicle, opened his door and stood behind his door. While attempting to stop the Appellant’s automobile, Officer Brown observed one of the occupants of the Appellant’s automobile bending over and acting suspiciously in the automobile. After the vehicles were stopped, the Appellant got out of his car. Officer Brown shined a light on the Appellant and ordered him to approach the patrol car. Officer Brown recognized the Appellant and observed that the Appellant had paper money in his hand which he was attempting to place in his billfold. He also noticed that the Appellant *1043 had “beggar lice” all over his clothes. At this point, the Appellant’s accomplice, Alexander, attempted to get out of the automobile and Officer Brown ordered him to remain in the automobile. Officer Brown testified that the area in which he had stopped the Appellant was not well lighted, and that he felt it was a dangerous situation. He, therefore, directed the Appellant to get back in his automobile and go with him to the Buzz Service Station, whereupon, the Appellant said to Officer Brown, “I didn’t do it.” The Appellant then returned to his automobile and drove his automobile to the Buzz Service Station with Officer Brown following closely behind him in the patrol car.
Upon arriving at the Buzz Service Station, Officer Brown observed the body of Paul W. Boatner, and conferred with Officer Smelley, a Northport police officer, as to the events which had occurred there at the service station. At this point, Officer Brown asked one of the other officers at the scene to write a citation to the Appellant, charging him with Reckless Driving. Officer Brown then went back to the area where he had stopped the Appellant and began searching for a gun. Thereafter, the Appellant and his accomplice were taken from the Appellant’s automobile and placed in a Northport city patrol car, and shortly thereafter the Appellant was transported to the Tuscaloosa County Jail by a Tuscaloosa County Deputy Sheriff, who was assisting in the investigation of the robbery and murder. It should be noted that the city of Northport does not have a jail and all city prisoners are confined at the Tuscaloosa County Jail. The Appellant arrived at the county jail in the custody of the officers at approximately 11:30 p. m., where he was held in custody. At approximately 1:30 a. m., Investigator Adolf South, a Tuscaloosa County Detective interrogated the Appellant. The record shows that prior to any interrogation, the Appellant was given a full Miranda warning by the officer questioning him. At this time, the Appellant gave the officers a statement denying any involvement in the crimes which had occurred at the Buzz Service Station. At approximately 3:45 a. m., the Appellant was again interrogated by Officer South in the presence of Officer Fields. The Appellant was asked" if he remembered the rights which had previously been explained to him, he stated that he did and that he was willing to discuss the matter. Thereafter, the Appellant told Officer South that he and his accomplice, Alexander, had gone to his father’s home, gotten a pistol, and gone to the service station for the purpose of robbing the service station attendants. That after entering the service station office, the Appellant’s accomplice, Alexander, had shot both attendants. That the Appellant and his accomplice had fled on foot to his automobile and were in the process of fleeing the scene of the crime at the time they met Officer Brown’s police automobile. This confession of the Appellant was reduced to writing and signed by the Appellant. Later that morning, the Appellant carried Officer South and Officer Fields and showed them the route which he and his accomplice had taken in their flight from the scene of the crime. The Appellant also showed Officer South the point where the pistol used in the crime had been thrown by his accomplice as they were being pursued by Officer Brown. The pistol was recovered at the point where the Appellant indicated the pistol had been thrown.
At the trial, the pistol was identified by Luther Gaskin, the father of the Appellant, as being his pistol. State Toxicologist, James Britton, testified that, in his opinion, the bullet removed from the body of Paul W. Boatner had been fired from that gun.
A State witness, one Mary Hinton, testified that shortly before the robbery and shooting at the Buzz Service Station, she had observed the Appellant’s automobile, which she recognized, parked at a point behind the Buzz Service Station. This observation was made while she was enroute to a nearby grocery store, and upon returning from the grocery store, she saw the same automobile and the Appellant at the Buzz Service Station in the custody of the police officers.
*1044 The Appellant offered no testimony at the trial of this cause.
II
The Appellant contends that his detention was unlawful and that his confession should not have been admitted into evidence as it was the product of an unlawful detention under the theory of Wong Sun v. U. S., 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416, and Logan v. Capp, 5 Cir., 525 F.2d 937. The Appellant relies in his argument upon the provision of Title 36,- Section 52, Code of Alabama Code 1940. Based on this Code Section, the Appellant contends that since he was arrested for the offense of reckless driving, that he should have been allowed to sign his own bond and be released from custody, and that failure to do so resulted in an illegal detention, and made his confession “fruit of the poison tree.” We are of the opinion that this case falls clearly within the exception contained in Title 36, Section 52 “b”, which states, in substance, that a traffic violator is not entitled to be released on his own written bond when the arresting officer has “good cause” to believe such person has committed any felony. Under the circumstances of this case, Officer Brown clearly had the right to arrest the Defendant for the offense committed in his presence, that of reckless driving. Weeks v. State, 49 Ala.App. 618, 274 So.2d 646. The officer did not, at the time of making the arrest, know that a particular felony had been committed, however, the officer had knowledge of sufficient facts to know that his presence was urgently required at the Buzz Service Station. Furthermore, Officer Brown found himself in what he felt to be a dangerous situation. Under these circumstances, the officer was justified in directing the Appellant to proceed to the Buzz Service Station in order to complete the arrest procedure. Upon arriving at the Buzz Service Station and observing the circumstances there, as well as discussing the occurrences there with his fellow officers, Officer Brown unquestionably had “good cause” to believe that the Appellant had committed a felony. The arrest was unquestionably legal as the misdemeanor was committed in the presence of the officer. The Appellant’s detention was not in violation of Title 36, Section 52, as it clearly falls within the exception outlined in Subsection b thereof. There being no unlawful arrest and no unlawful detention, the Appellant’s Motion to Suppress his confession was properly overruled, and the Appellant’s confession was properly admitted into evidence.
The Appellant contends that the trial court was in error for refusing to consider all the circumstances surrounding the Appellant’s arrest, detention, interrogation and confession in determining the admissibility of the Appellant’s confession. It appears from the record that a full hearing on the Appellant’s Motion to Suppress was held outside the presence and hearing of the jury. There is nothing in the record to indicate or suggest that the trial court failed or refused to consider any of the pertinent facts surrounding the Appellant’s confession. The record reflects that the proper predicate was laid to show that the Appellant’s confession was voluntary. That before his interrogation the Appellant was given the standard Miranda warning which he stated he understood. That some two and one-half hours later, the Appellant was reminded of his Miranda rights and the Appellant indicated that he was still willing to discuss the occurrences of that night. The record shows nothing which suggests any inhumane treatment of the Appellant prior to his confession. It appears from the record that his statement admitting his participation in the crime was in no way tainted by any activities which were in violation of his rights under the Fourth or Fifth Amendment.
Ill
We have carefully considered the entire record as required by Title 15, Section 389, Code of Alabama 1940.
From this examination, we conclude that error is not made to appear.
*1045 The foregoing opinion was prepared by Hon. James E. Smith, III, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Section 38, Title 13, Code 1940, as amended; the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
All the Judges concur except CATES, P. J., not sitting.