Charles SAMUEL, Plaintiff,

v.

Officer Gerald BUSNUCK et al., Baltimore City Police Dept., Defendants.

Civ. A. No. B 75–504.

United States District Court,
D. Maryland.

Nov. 30, 1976.

Paul A. Gibbons, Baltimore, Md., for plaintiff.

Robert C. Verderaime, Baltimore, Md., for defendants.

## OPINION

DUMBAULD, District Judge, Sitting by Designation.

The case at bar arises under 42 U.S.C.A. § 1983 which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.[1]

■ This remedy is available for enforcement of such, and only such, rights as are "secured" by the Constitution and laws of the United States.[2]

■ Among rights so secured by the Constitution are those embraced within the terms of the Fourteenth Amendment. That enactment ordains that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor

---

1. Jurisdiction of such an action is given by 28 U.S.C. § 1343(3) which provides:

   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   \*   \*   \*   \*   \*   \*

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

   Logically, if the jurisdictional provision of 28 U.S.C. § 1343(3) is less extensive than the substantive scope of 42 U.S.C. § 1983, there would be no federal forum for enforcement of the more expansive substantive right. Dumbauld, Federal Jurisdiction in Civil Rights Cases: A New View, 25 Rutgers L.R. (1971) 545, at 547–48. But in *Examining Board v. Flores*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65, 1976, the Supreme Court interpreted the two provisions as in *pari materia*, and construed the jurisdictional provision broadly. See also *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed. 276, 288, 292 (1976).

2. The term "secured" may for practical purposes be regarded as equivalent to "protected" or even to "granted." See Dumbauld, *The Declaration of Independence and What It Means Today*, (1950) 63; *Hague v. C.I.O.*, 307 U.S. 496, 526–27, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

deny to any person within its jurisdiction the equal protection of the laws."

The due course of law thus constitutionally guaranteed includes protection from punishment for crime until after conviction thereof (pursuant to jury trial, if that additional right is applicable and not duly waived).

█ It is a familiar platitude that arrest and indictment do not constitute evidence of guilt, but are merely preliminary procedural steps putting the case into a proper posture for consideration by the trier of the facts, whose function it is to determine guilt or innocence, in the absence of a valid plea of guilty.

█ Hence the function of police or law enforcement officers in making arrests is not to determine guilt or to inflict punishment, but merely to apprehend suspects and arrange for their appearance in due course before the adjudicating agency.

█ If, therefore, police officers act *ultra vires* in excess of their lawful authority, and inflict corporal injury on suspects by way of punishment for supposed offenses, their action is not in conformity with due process of law. *Screws v. U. S.*, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Williams v. U. S.*, 341 U.S. 97, 101, 71 S.Ct. 576, 95 L.Ed. 774 (1951).

█ Likewise the Fourth Amendment, now declared by the Supreme Court to be applicable against the States, provides that "The right of the people to be secure in their *persons* . . . against unreasonable searches and seizures, shall not be violated." [Italics supplied.] This provision outlaws the use of excessive and hence "unreasonable" force by police officers in making an arrest. *Jenkins v. Averett*, 424 F.2d 1228, 1232 (C.A.4, 1970).

█ In executing their appropriate tasks, however, and particularly in the course of making a lawful arrest, they are entitled to use such force as is reasonably necessary to accomplish the task. The reasonableness or excessiveness of the force necessary is a matter to be determined in the light of the circumstances as they appeared to the officer at the time of the arrest; and courts are not to substitute their own judgment (as a "Monday morning quarterback") for the official discretion of the functionary in the front line, when such discretion is exercised reasonably and in good faith. Force thus found to be reasonable or not excessive under the circumstances is deemed to be in conformity with, and not in contravention of, due process of law; and hence does not create liability under 42 U.S.C. § 1983.

█ When officers act in the bona fide and reasonable belief that their actions are in accordance with law, even though it be later determined that such belief was erroneous, they have a complete defense to liability under 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Hill v. Rowland*, 474 F.2d 1374, 1377 (C.A.4, 1973); *Eslinger v. Thomas*, 476 F.2d 225, 229 (C.A.4, 1973). Cf. *Jannetta v. Cole*, 493 F.2d 1334, 1338 (C.A.4, 1973). As stated in *Eslinger* "good faith, coupled with reasonable grounds to believe one is acting within the law, should be sufficient to preclude liability for damages."

█ It is important to emphasize also the distinction between a violation of 42 U.S.C. § 1983 and mere misconduct or wrongful action which constitutes an ordinary tort, and is to be redressed by use of ordinary tort remedies rather than by an action under 42 U.S.C. § 1893. *Screws v. U.S.*, 325 U.S. 91, 108–109, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Isenberg v. Prasse*, 433 F.2d 449 (C.A.3, 1970); *Fletcher v. Hook*, 446 F.2d 14, 15 (C.A.3, 1971).

Furthermore, the unwillingness of the Supreme Court to convert an ordinary tort under State law into a species of federal constitutional claim merely because State action is involved is evinced by the decision in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed. 276, 281, 288 (1976).

We now proceed to the application of these legal doctrines to the facts of the case at bar, which are fairly simple.

Several automobiles were parked near a bar in a space then or formerly required to accommodate buses making a left turn at the corner of Pratt and Gilmor streets, in Baltimore City.

Defendant Gerald Buznuck of the city police arrived in response to a complaint from the bus company and began issuing traffic tickets. One was issued to a female companion of plaintiff, who came out of the bar with her and protested when her car was being ticketed, but Buznuck had already progressed so far in filling out the form that to desist would have caused complications in the bureaucratic red tape. She drove off and plaintiff returned to the bar, warning those present that the officer was issuing tickets. At least one of the offending cars was permitted by Buznuck to drive off promptly without receiving a ticket.

One Willie Wesley Gregory, a co-worker of plaintiff's, then drove up to visit the bar, and was about to park in the prohibited zone. According to Gregory's deposition, plaintiff "told me that he had something to tell me about where I was getting ready to park. He said, Don't park here, you will get a ticket." (Dep. p. 7).

According to plaintiff's testimony he told Gregory that he wanted to talk to him about something (apparently some "private business" in addition to the warning about parking), but plaintiff declined to state the nature of the business, and because it did not seem too relevant to the case, the Court did not direct him to answer.[3]

Buznuck tooted his horn, but since Gregory did not at once drive off, the officer got out of his car and came over to Gregory's car and warned him to leave the zone. Gregory seemed to be about to drive on.

Plaintiff then stated that he was talking to his buddy, who would leave when the conversation was concluded. Defendant said that he was talking to Gregory, not to plaintiff; and that he, defendant, and not plaintiff, was directing traffic. He added, "Furthermore, you're under arrest."

Plaintiff thereupon proceeded at a brisk pace to his own car preparing to leave the area; but defendant ran after him and grabbed plaintiff's right shoulder with his left hand (in which he carried mace, which he sprayed from a six-inch distance upon plaintiff's face when plaintiff was spun around). According to Buznuck, plaintiff had drawn back his arm as if to strike defendant before the spraying. They then grappled in a "bear-hug", but defendant with his night-stick in an upward movement hit plaintiff in the head. He also took out his handcuffs and hit plaintiff on the head with them several times. Defendant also on his police radio summoned a "back-up" by other officers, and also sent a "Signal 13" (a distress signal indicating that the officer is losing control of the situation). Two other officers did arrive, and each of them took one arm of plaintiff's and he was handcuffed and transported in the "patrol cruiser" (alias "paddy-wagon") to be booked. Plaintiff was subsequently found not guilty of the charges of resisting arrest and causing a public disturbance which had been placed against him.

If it were deemed material, the Court would find that plaintiff doubtless did direct some of the customary epithets toward the police in a loud and angry tone, but that there were few persons present in the area except one woman in a phone booth who quickly vanished, and the curious spectators who instantaneously assemble when police

---

**3.** In connection with the discrepancy between plaintiff's testimony and Gregory's (as well as with respect to conflicts between plaintiff's and defendant's testimony) it should be noted that plaintiff was thoroughly discredited on cross-examination. Also, though mild-mannered in court, plaintiff seemed somewhat flippant or careless with regard to his duty to give complete and correct answers to interrogatories or other papers to be prepared; and also evinced a "Ralph Nader type" personality, prone to assert an "inalienable right" to do whatever he might be doing. In case of conflict, the Court would not place reliance upon plaintiff's uncorroborated testimony. Another mysterious and unexplained aspect of plaintiff's behavior is the fact that he refused hospital treatment for his injuries after the incident. One might perhaps infer that he wished them to be available in their pristine state for photographs for use in litigation.

cars gather in the neighborhood with blue lights flashing. In other words, there was no danger of riot.

In fact it seems clear that the whole incident resulted from defendant's poor judgment. If he had been able to "hold his horses" for a short time (or possess his soul in patience, to use another phrase) Gregory would have driven off (as he indeed did) and plaintiff would also have fled, and the streets would have been peaceful and clear of improperly parked vehicles.

It is also indisputably established that as a result of the incident plaintiff did receive substantial injuries. The medical testimony, as well as photographs taken two days after the incident prove this; as well as a letter from the bus company, plaintiff's employer, showing that he lost work for two weeks; not to mention pain and suffering.

If this were a claim for damages proximately resulting from defendant's negligence or want of due care, the Court would have no difficulty in finding for the plaintiff. However, as stated before, it is clear that mere torts do not as such amount to violations of 42 U.S.C. § 1983. In applying the standard pertinent to denial of due process in the constitutional sense, we are unable to say that the improvident and misguided actions of the defendant were not taken in good faith and with a reasonable belief in their legality. Therefore liability under 42 U.S.C. § 1983 was not incurred.

This opinion shall be deemed to constitute the Court's findings of fact and conclusions of law.