Gary R. MELTON, Plaintiff,

v.

Wayne SHIVERS and Ed Hay, Defendants.

Civ. A. No. 79–24–E.

United States District Court, M. D. Alabama, E. D.

Aug. 29, 1980.

---

Gentry, Sprayberry & Kent, Michael I. Kent, Opelika, Ala., for plaintiff.

Radney & Morris, Tom Radney, Alexander City, Ala., for defendants.

## OPINION

HOBBS, District Judge.

This case was commenced by Gary R. Melton, a white male, against Wayne Shivers, Ed Hay and the Town of Wadley, Alabama, alleging that the individual defendants wrongfully assaulted and beat him in violation of his rights guaranteed by the Fifth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution "as protected under 42 U.S.C. § 1981 et seq."

The Court has treated the complaint as one seeking damages for personal injuries under and pursuant to the provisions of 42 U.S.C. § 1983 which provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Jurisdiction is vested in this Court by the provisions of 28 U.S.C. §§ 1331 and 1343. The amount in controversy is in excess of $10,000.

■ Defendant Town of Wadley was dismissed on the ground that the only allegation against the municipality was that it was the employer of the individual defendants. Liability may not be imposed upon a governmental entity on a respondeat superior theory. *Monell v. New York Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Owen v. City of Independence, Mo. et al,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

A jury trial was not demanded, therefore, the case came on to be heard before the Court as trier of fact. Plaintiff took the stand as his only witness. Both defendants testified and several other witnesses were called by the defense. After consideration of the testimony and exhibits presented at trial, the Court is satisfied that plaintiff did not meet the burden of proving his case by a preponderance of the evidence.

## FACTS [1]

The present cause arose out of the following most unusual set of facts which took place on February 26, 1978, in Randolph County, Alabama.

---

1. On the stand plaintiff, as his sole witness, displayed an inability to remember certain facts and a capacity for producing other "facts," both of which plaintiff attributed to his admitted hallucinations.

   On the other hand, defendants presented the testimony of six witnesses other than themselves. These witnesses corroborated the testimony of the defendants in several critical areas.

   Therefore, though there was actually a certain amount of agreement as to essential facts (e. g., defendants admitted striking plaintiff several times in the head), where the evidence was in conflict, the Court could not rely upon plaintiff's uncorroborated testimony, which by his own admission, was based on his recollection of events while he was hallucinating.

On that night, plaintiff left home in his mother's Volkswagen automobile and drove to Wadley, Alabama as he testified for the purpose of seeking the counsel of a friend, one Mike Bradford. Plaintiff had recently lost his job and was in a state of depression.

When he reached Wadley, plaintiff drove to a housing project and entered one of the apartments. Plaintiff testified that he believed he was entering the home of Mike Bradford, however, he admitted that Bradford's home was a green, shingled structure located one block away. The project housing was brown brick and apparently of a duplex design.

The apartment which plaintiff first entered was the dwelling of Marsha Ray Teel and her husband. When plaintiff entered their apartment without a knock, there were six persons in the Teel living room. Plaintiff looked at each and asked each in turn: "Do you know me? After each negative response, plaintiff glanced in the direction of a shotgun standing in the corner and then returned his stare to the next person. There was testimony that plaintiff "looked wild" and had "strange eyes." The action of Marsha Teel's sister in standing to go to the telephone to call the police apparently frightened plaintiff, who ran from the apartment.

From the Teel apartment plaintiff went to an apartment next door. He imagined seeing a girl he knew and a man enter this apartment and close the door.[2] For some unexplained reason, plaintiff decided that this girl required his protection. He therefore attempted to enter this second apartment by breaking down the screen door, which had been hooked. Still unable to get in, plaintiff attempted to break open the main door with his shoulder. He succeeded only in splitting the door itself.

This apartment was in fact occupied by Joyce Haynes, her seventy–one–year–old mother and a nephew. Frightened by plaintiff's actions, the women inside began screaming and the nephew, who had a gun,

shouted through the door telling plaintiff he would shoot if the plaintiff did not leave.

Apparently concerned by the prospect of being shot, plaintiff ran to his automobile and drove off.

In the meanwhile, the Wadley police had been notified of the disturbance at the housing project. Police Chief Ed Hay and Lieutenant Wayne Shivers, the defendants, met the plaintiff at the intersection as plaintiff was leaving the project. At this time, defendants were not certain of plaintiff's involvement in the incident but identified themselves as police and directed him to stop his automobile where it was. Shivers in his uniform got out of the police car to question the plaintiff, and Hay drove about one block to the project to talk with the parties who had called the police.

Contrary to the orders of Shivers, who was standing beside plaintiff's car, plaintiff began driving away. At this point several witnesses began pointing toward plaintiff's automobile and shouting that he was going to get away. The policemen had previously been told that plaintiff had broken into one of the apartments.

Defendant Hay returned to pick up Shivers and a far from routine automobile chase ensued. Defendants caught plaintiff's vehicle at the Coosa River bridge. The police blue light was on, and plaintiff stopped his automobile on the other side of the bridge. However, when defendants approached the rear of plaintiff's automobile on foot, plaintiff sped away. Defendants returned to their automobile and the chase resumed at a high rate of speed. With the blue light and siren on, defendants pulled up parallel to plaintiff who swerved in their direction running them off the road.

The police caught plaintiff a third time, but as defendant Shivers approached the Volkswagen on foot, plaintiff again drove away. For a fourth time, the police officers forced plaintiff to stop, but when Shivers left the police car and plaintiff drove away,

---

**2.** It is conceded that these people did not actually exist. Plaintiff testified that he had been told by his doctors that he was hallucinating at the time, and that the hallucinations continued for approximately three days.

Lieutenant Shivers fired three shots from his service revolver into the left side of plaintiff's automobile, unsuccessfully attempting to blow out a tire.

Defendants once again gave chase, having concluded that the only way to stop plaintiff was to lock the bumpers of the two automobiles together. With this purpose, Hay rammed the rear of the Volkswagen at least three times. Using his brakes, Hay was finally able to stop plaintiff's automobile.

Plaintiff left his automobile after it was forced to a stop, whereupon defendants sought to seize plaintiff. As they walked plaintiff toward the police car, plaintiff attempted to break way and all three tumbled down an embankment. The struggle was prolonged with both officers unable to subdue plaintiff. Defendant Hay sat on his back while Shivers attempted to handcuff the plaintiff, though he was successful in getting only one hand in cuffs at that time. Hay admitted striking plaintiff three or four times over the head with the barrel end of his pistol. Shivers struck plaintiff once with his pistol and once with his fist. The blows appeared to have little effect on plaintiff insofar as subduing him.

The defendants had radioed to the neighboring town of Roanoke for assistance.

With the assistance of another Wadley off duty police officer who happened to be passing along the highway and saw the struggle, and an officer from Roanoke who answered the call for help, the handcuffs were finally placed on the plaintiff but not before the third Wadley officer was kicked down the hill by plaintiff. There was testimony that plaintiff was exceptionally strong, having been a high school wrestler and football player.

The Roanoke police and Randolph County sheriff's offices assisted in getting plaintiff into an automobile. He was bleeding from the head when brought to the top of the hill. The sheriff took plaintiff to the county jail in Wedowee, Alabama and then to the hospital where he received twenty–one stitches and treatment for a broken nose.

From the hospital in Wedowee, plaintiff was placed by his family in Hillcrest Hospital in Birmingham, Alabama, which is a hospital for the treatment of alcoholism, drug addiction and the emotionally disturbed. He remained there under his family's commitment for approximately thirty days.

Plaintiff has charges pending against him in Wadley of reckless driving, resisting arrest and failure to stop for a flashing blue light and siren. No charges have been filed against plaintiff for his actions at the housing project.

While in the hospital in Wedowee, plaintiff was questioned by state troopers conducting an investigation of the incident. A copy of the report resulting from the investigation was introduced into evidence without objection. The report contained the statement of plaintiff's brother that "it was a wonder the police didn't have to kill [the plaintiff] as wild as [he] was acting and as strong as [he] is."

## LAW

■ The remedy of 42 U.S.C. § 1983 is available to protect the rights of individuals "secured" by the Constitution and laws of the United States. The due process guarantees of the Fourteenth Amendment include protection from punishment for crime until after conviction in a court of law.

■ The function of police officers, preliminary to trial, is to arrest the suspect and present him before the proper authorities. The function of police officers is not to determine guilt and inflict punishment. Therefore, if police officers act beyond their lawful authority and beat or otherwise inflict corporal injury upon suspects by way of punishment for supposed offenses, their action is not in conformity with due process of law. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Williams v. United States*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951).

■ The Fourteenth Amendment likewise protects against unreasonable searches and seizures and has been held to prohibit

the use of excessive and hence "unreasonable" force in making an arrest. *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir. 1970).

■ In *Jones v. Marshall*, 528 F.2d 132, 142 (2d Cir. 1975), the Court wrote that in interpreting § 1983 "the states must be given some leeway in the administration of their system of justice, at least insofar as determining the scope of such an unsettled rule as an arresting officer's privilege for the use of deadly force." [3]

It has also been held that in the course of making a lawful arrest police officers "are entitled to use such force as is reasonably necessary to accomplish the task. The reasonableness or excessiveness of the force necessary is a matter to be determined in the light of the circumstances as they appeared to the officer at the time of the arrest. . . . Force thus found to be reasonable or not excessive under the circumstances is deemed to be in conformity with, and not in contravention of, due process of law; and hence does not create liability under 42 U.S.C. § 1983." *Samuel v. Busnuck*, 423 F.Supp. 99, 101 (D.C.1976).

In *Samuel*, during a struggle with the plaintiff, the defendant police officer struck the plaintiff in the head with his night stick and then struck him several times in the head with his handcuffs. Though the trial court found the defendant's actions "improvident and misguided," it was unwilling to say those actions were not taken in good faith and with a reasonable belief in their legality; therefore, there was no § 1983 liability.

In *Redding v. Medica*, 411 F.Supp. 272 (D.C.1976), one plaintiff struck the two defendant police officers with a seabag while walking down the street. When the police attempted to take this plaintiff into custody, the second plaintiff interfered with the arrest, wrestling an officer to the ground. The plaintiffs were struck with blackjacks and subdued; one suffering a slight concussion. The court found that where the plaintiffs resisted arrest and their injuries resulted in an attempt to subdue them, it could not say excessive force was used.

See also *Lamb v. Cartwright*, 393 F.Supp. 1081 (D.C.1975), and *Conklin v. Barfield*, 334 F.Supp. 475 (D.C.1971).

## CONCLUSION

Taking all the facts presented together with the body of law applicable to the issues here involved, the Court cannot say that the force used to accomplish the arrest of this plaintiff was disproportionate to the exigencies of the situation.

Plaintiff was known by defendants to be a suspect in an attempted burglary, identified by eyewitnesses. He failed to obey instructions to remain at the scene, and flagrantly, repeatedly and dangerously refused to yield in the pursuit which followed.

■ This Court accepts the testimony of defendants and the third officer that plaintiff struggled violently against the arresting officers so long as he was physically able. One witness, James Lee, testified that he had never seen a man as strong as the plaintiff. There was also evidence that during the struggle, plaintiff attempted to grab the pistol carried by defendant Hay. Four men were finally required to subdue the plaintiff, despite the blows delivered to plaintiff. Defendants testified that they believed they were fighting for their lives.

This Court will not substitute its own judgment for that of a police officer in the field under the circumstances of this case. Although the Court is concerned by the extent of force employed in this particular case, it cannot say that such force was excessive in light of the facts and as defined in the cases interpreting § 1983 of the Civil Rights Act.

Plaintiff's constitutional and statutory rights were not violated; therefore, plaintiff is not entitled to recover under 42 U.S.C. § 1983.

The foregoing shall be deemed to constitute findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure.

---

**3.** Under Alabama law, and presumably all other states, a police officer is permitted to use force against one who resists arrest. *Weeks v. State*, 49 Ala.App. 618, 274 So.2d 646 (1973).