190 So. 95

**HART v. STATE.**

5 Div. 73.

Court of Appeals of Alabama.
May 2, 1939.

Rehearing Denied June 6, 1939.

Robert S. Milner and Paul M. Page, both of Dadeville, for appellant.

546

BRICKEN, Presiding Judge.

The indictment in this case charged the defendant with the offense of robbery. It was in proper form and substance, and bore proper endorsements, hence was duly authenticated. The fact that the Solicitor of the circuit court did not sign his name to the indictment in no manner affected its validity. As stated, in our case of Griffin v. State, 22 Ala.App. 369, 115 So. 769, 770, "An indictment receives its legal efficacy from being found and returned into court by a grand jury; and it is not necessary, to its validity, that it be signed by the solicitor, or any one acting for him." It is proper for the Solicitor to attach his signature to an indictment, but his failure or omission to do so does not afford proper grounds of objection.

The specific charge against this appellant was, that he feloniously took four one dollar bills, all of said bills being paper money of the currency of the United States of America; and fifty cents in specie coin of the United States of America consisting of one piece of the denomination of fifty cents, all of said property being of the total value of $4.50, the property of Cora Lee High, from her person and against her will, by violence to her person, or by putting her in such fear as unwillingly to part with the same, etc.

The evidence adduced upon the trial disclosed that this appellant is of the negro

Thos. S. Lawson, Atty. Gen., and Edwina Mitchell, Asst. Atty. Gen., for the State.

race, is 17 years of age, and that he, together with several others of his race, 4 men and 3 women, on the evening in question were all friendly and riding in an automobile together. That after traveling some distance the left front tire of the car blew out, whereupon all of the party alighted from the car and remained thereabout while attempting to repair the blown out tire. The alleged injured party, Cora Lee High, testified:

"I know Joe Hart. I saw him on a Wednesday night in September of this year. We started to Waverly in a car with him. * * * Susie Davis and James Holloway and Smith and Rosa Lee Knight were in the car with me; Hubert Smith was driving. We stopped on the highway between Dadeville and Camp Hill, the car had a puncture. * * * They told us to get out so Hubert Smith could get something from under the back seat to fix the puncture with. I got out of the car and started walking back down the road this way and Joe Hart he come on down the road this way. We got a little piece back of the car and we were standing up together and Rosa Lee Knight come up talking with us, and Pevy Smith come on down on the side of Rosa Lee Knight. * * * I just turned around from Joe Hart and said something to him and started on off. And by that time he just grabbed me and throwed me down. I turned by back to him and he just grabbed me and throwed me down. I said 'I ain't going to do nothing. I done told you I ain't going to do nothing.' He said 'Oh, hell,' and grabbed me and throwed me down. I started to fighting him in the face with my hand and the purse, and I was fighting him so he saw I meant not to do anything, and he taken his knee and he put it on my arm and he wrung the pocketbook out of my hand and he jumped up and run. * * *

"The Solicitor asked the witness the following question: 'After he took your pocketbook did he go right on back to the car?' And the witness replied: 'No, sir. He went off a little piece ahead of the car and taken the money out. I did not see him take it out.' The Solicitor asked the witness the following question: 'Did you see him take the money out?' The witness replied: 'No, sir. But I know it was in there and when he threw it back to me it wasn't in there. I had $4.50 in the pocket book. It was four paper dollar bills and one case 50 cents. I had the money when I went behind the car with Joe Hart. It was in my pocketbook. When Joe Hart threw the pocketbook back to me the money was not in it.'

"On cross examination the witness testified as follows: I am 22 years old the 1st day of June."

Rosa Lee Knight, the only other witness introduced by the State, as to the main facts of the trial, stated she was present, and her testimony tended to corroborate Cora Lee High to some extent. The State, therefore, necessarily relied mainly upon the testimony of Cora Lee High for a conviction.

On cross-examination of the alleged injured party, the defendant undertook to lay a predicate to show that on Thursday morning, the day following the alleged commission of the offense, she had made statements and declarations which were inconsistent and in direct conflict with her testimony upon the trial. In this connection, the record shows the following:

"Q. You had a conversation with Hosea Hart on Thursday morning following this matter, (speaking of the alleged robbery) did you? Ans. Yes sir.

"Q. Where was that conversation? Witness. Up there in front of the place where I work."

Counsel for defendant then asked the witness: "I will ask you if you didn't tell him in that conversation, and with just you and he by yourselves, that you did not know who got your money, and that you didn't want to cause the boys any trouble and would withdraw that complaint but that the Sheriff told you that you had better not come back to take up the warrant or he would put you in jail?

"The Solicitor objected to this question. The court sustained the objection. And to this action and ruling the defendant then and there duly and legally reserved an exception."

The manifest purpose of appellant in seeking to lay the foregoing predicate, by the cross-examination of this, as stated, the main witness for the State, was to discredit her testimony, and the matter under inquiry being material, this the defendant had the absolute right to do. The ruling of the court was therefore error. Authorities on this rule of evidence are innumerable. Citation thereof is deemed unnecessary.

The next insistence of error is based upon an exception reserved by de-

fendant to the following excerpt of the court's oral charge, towit: "The law recognizes the weaknesses that attach to human nature and that a person who is interested might possibly state his case stronger or would exaggerate or something to that effect, maybe unconsciously, because of the interest that he has in it." This exception is properly presented for our consideration, and insistence to the contrary, by the State, is untenable. The above quoted statement was made by the court in connection with the weighing, by the jury, of the testimony of the defendant who took the stand in his own behalf, and the credence to be accorded his testimony.

It has been generally held that the credence and probative force to be given to the testimony of the defendant, when, as here, he elects to testify, should be left to the jury, unembarrassed and uninfluenced by direct or indirect instructions from the court bearing on its sufficiency. And here, we are of the opinion if the above quoted statement of the court in the oral charge stood singly and alone, the rule above announced might have probably been infringed; but, as has been often advisedly said, some parts of the oral charge as to which exceptions were reserved, if considered standing alone, unaided by that which preceded, and that which followed, would probably be error to reverse; but, when taken in connection with that which preceded, and that which followed, and in connection with the given special written charges, as the law requires must be taken, it affirmatively appears no injury could have resulted, reversible error may not be declared. Thus, in the case at bar, we are of the opinion that no error prevailed in the excerpt of the oral charge, excepted to in view of what the court had said previously, and after the statement complained of had been made. We quote the following utterances of the court in this connection, and hold there was no reversible error involved when taken and considered under the rule above stated. The court said: "If there are contradictions in the testimony here then it is the duty of the jury to reconcile those contradictory statements if you can in order to make all the witnesses speak the truth. If, however, after fairly considering the testimony you are unable to reconcile the contradictory statements, then it is your province to say which you will believe and which you will disbelieve, to say which statements you will accept and be influenced by and which you will reject and refuse to be influenced by. But you are not captiously to reject the testimony of any witness, but you are to give to each witness and what he has to say a fair and impartial consideration. The defendant is a competent witness in his own behalf. The law says that you may take and weigh his testimony in the light of the fact that he is the defendant and interested in the result. That does not mean that because he is interested in the result that he cannot tell the truth or that he has not told the truth in this particular instance. It merely means what it says and no more. The law recognizes the weaknesses that attach to human nature and that a person who is interested might possibly state his case stronger or would exaggerate or something to that effect, maybe unconsciously, because of the interest that he has in it. So if any other witness shows interest here, like this prosecuting witness, she is interested in this being the person alleged to have been robbed, weigh her testimony and that of any other witness who is shown to be interested in the light of that interest in determining what weight you will give to the testimony of the witness."

■ The insistence that the defendant, under the evidence, was entitled to the general affirmative charge, cannot be sustained. There was evidence adduced upon the trial tending to make out the case against the accused. This evidence could not be classed as a mere scintilla as insisted upon. It presented a jury question, and the learned trial judge correctly held the court was without authority to direct the verdict.

■ The remaining point of decision, relied upon to effect a reversal, was the action of the court in overruling defendant's motion for a new trial. This motion was predicated upon 14 separate and distinct grounds. As far as we can ascertain from the record the motion was heard and determined without any evidence being offered in support thereof. And if, as it appears, no evidence was offered in this connection, several grounds of the motion are dehors the record. This has reference to grounds 6 to 14, inclusive. As the matter is here presented we perforce must hold there was no error of the court in denying to grant to defendant a new trial.

For the error indicated the judgment of conviction, from which this appeal was taken, is reversed and the cause remanded.

Reversed and remanded.