264 So.2d 554

**Ervin Lee CRAWFORD**

v.

**STATE.**

**6 Div. 170.**

Court of Criminal Appeals of Alabama.

Jan. 11, 1972.

Rehearing Denied Feb. 29, 1972.

**326**

MacDonald Gallion, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

Kenneth D. Wallis, Birmingham, for appellant.

CATES, Judge.

Murder in the first degree: death by electrocution.

### I

This is a companion case to Brown v. State, 48 Ala.Cr.App., 304, 264 So.2d 529.[1] * Part I of the opinion of the majority of this Court on original deliverance (January 26, 1971) in *Brown* contains the essential facts. However, Crawford, unlike Brown, took the stand as a witness in his own behalf.

The defense established without dispute that the victim, Harris, was killed by a bullet from Brown's gun. Crawford admitted shooting at Harris. Hence, if convinced to the required degree, the jury from the evidence could have inferred that Crawford's participation helped "pin down" Harris so that Brown's killing him was thereby facilitated. Code 1940, T. 14, § 14.

### II

On testimony taken on the motion for new trial, one of Crawford's petty jurors testified that he knew that (1) Brown previously had been given a death verdict, and (2) Crawford and Brown were both accused of killing Harris. However, this juror testified that before Crawford's trial he had no knowledge of the facts of the killing. The trial judge overruled the motion for new trial. On the record before us we perceive no error.

1. The *Brown* case is again before the Supreme Court of Alabama on appellant's petition for certiorari "as a matter of right." Supreme Court Rule 39 as amended December 14, 1970, 286 Ala. xxi.

* Ante p. 304.

### III

■ Apparently, the defendant while in court was handcuffed for an unspecified period of time. In brief his counsel asserts, " * * * upon the beginning of closing arguments and after all testimony was in, the Appellant was allowed to be present in the courtroom and in the view of the jury shackled by handcuffs (R. p. 407)." Ground 14 of the motion for new trial claimed error because the jury was "allowed to view the defendant [thus] * * * and the removal of the handcuffs * * *."

The record shows the following:

"THE COURT: Ladies and gentlemen, I don't think—we have been going a good while now, and I know you need a recess, so we will be in recess for lunch, and you may retire to the jury room at this time and get ready for lunch.

"(Thereupon, the jury left the courtroom at 11:48 a. m., and, out of the presence and hearing of the jury, the following proceedings were had and done:)

"THE COURT: Gentlemen, I believe you wanted to get an exception in the record about handcuffs.

"Go ahead and do that at this time.

"MR. TUCKER: Yes, sir. We would like to except to the appearance of the defendant before the jury in handcuffs.

"THE COURT: Gentlemen, let me say this:

"We make these various motions in the record, and somebody reading the record might not know what happened.

"Let the record show that when we came out after the last recess the handcuffs had been inadvertently left on the defendant, who was seated at the counsel table, with approximately twelve feet of table between him and the jury box, and his hands were in his lap, where he was seated.

"He did raise his hands, where the jury could see them, not in a demonstrative manner. His hands were placed on the table, where anyone could have seen them, but, when it became obvious, the bailiff called it to my attenion, and the handcuffs were removed.

"All right, we will see you at 1:30."

In Clark v. State, 280 Ala. 493, 195 So.2d 786, Merrill, J., noted the Alabama authorities on restraining prisoners. See also Ala.Digest, Criminal Law, headnote 637.

In Starr v. State, 209 Ga. 258, 71 S.E.2d 654, the opinion pointed out the record failed to disclose how long the defendant remained manacled or that any jurors had observed that he was manacled. The court concluded that, at most, there was a technical breach of the rule against handcuffs and the record was without proof of prejudicial effect. The trial judge's denial of mistrial was held to have been within sound judicial discretion.

Likewise on the record before us the ruling below is sustainable because of lack of proof that any juror saw the defendant handcuffed. Hence, no prejudice influencing the verdict was established.

The taking of testimony had ended and the defendant was represented by two lawyers to argue in summation to the jury. Hence, cannot see that this brief restraint would have had any appreciable tendency to confuse or embarrass the defendant in the exercises of his mental faculties so as to assist his lawyers.

We find no error in this ruling. 21 Am.Jur.2d, Criminal Law, § 240.

### IV

The spectre of Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387, is brought across our horizon. The motion for new trial was heard August 14, 1970. *Coleman*, supra, was decided June 22, 1970. But the instant trial was April 6 through 9, 1970, well before *Coleman*, supra.

We excerpt from the hearing on the motion for new trial:

"THE COURT: I want to say this for the record and see if this is fair to say:

"As I understand, there is one ground which you, by amendment, added to your motion for a new trial, and that had to do with ground number 20, which was added by amendment to the motion, to the effect that the defendant was not represented by counsel in the preliminary hearing.

"Now, as I understand, the Court did ask you if this ground of your motion was based on the right to cross examine and to discover, and that phase of it, as distinguished from some witness who may have been available at that time but who later may have become unavailable, and I believe you said the situation as to the witness did not occur, but that you based it on the other phases, that is, the advantages that may have been gained through and discovered through cross examination at that time.

"Is that correct?

MR. WALLIS: That is substantially correct. I said I am not aware of a witness that became unavailable, and I haven't been aware of the situation in the trial.

"THE COURT: The reason I put that in the record, if it comes up—where records are silent, at times the appellate court has to send it back for the lower court to take testimony on some particular point.

"I thought I would clear that up, rather than to have them send it back for me to do that when I could do it easily right now.

"MR. TUCKER: Your Honor, at the preliminary hearing the defense could have subpoenaed witnesses for the State, who were not called at the preliminary hearing. who could have been called, and,

while they were not missing, they were not at the preliminary hearing.

"THE COURT: You are leaving me in a state of confusion. You are saying it would have been nice to have any witnesses who were not at the preliminary hearing, and having benefit in advance of knowing what the testimony was, but you are not contending that any witness has either died or moved off or not made available to the Court whose testimony may have been preserved?

"MR. TUCKER: No, sir.

"THE COURT: All right."

Seemingly the trial judge had in mind the "harmless-beyond-a-reasonable-doubt" test mentioned in *Coleman,* supra, which is derived from Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. His conclusion, therefore, is a finding of harmlessness to that degree.

Whether or not his ruling was "conceding arguendo" that there was a preliminary hearing without the defendant's having counsel, we cannot but surmise.

The State argues that under Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248; Coleman v. Alabama, supra, should apply only to preliminary hearings *after June 22, 1970.* This, of course, would exempt Crawford's case from the operation of the rule. We, however, pretermit such an oracular divination.

■ In view of the lack of any record proof that there was a preliminary hearing we find no error in the trial judge's ruling. A preliminary hearing does not always occur, Braden v. State, 45 Ala.App. 186, 227 So.2d 816, because a grand jury can be in session when a crime is committed.

### V

McGautha v. California and Crampton v. Ohio, 402 U.S. 183, 91 S.Ct. 1454, 28 L. Ed.2d 711, dispose of the appellant's death penalty arguments. Butler v. State, 285

Ala. 387, 232 So.2d 631, and Swain v. State, 285 Ala. 292, 231 So.2d 737, expound recent views of our Supreme Court that the death penalty per se is not cruel and unusual punishment.

## VI

Virtually the same interrogation to effect compliance with Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, was used here as is shown in *Brown*, (Mss. 6 Div. 128 Appendix).

## VII

■ The setting for this claim of error came from testimony that at the outset of the expedition Brown had handed Crawford a pistol.[2] Crawford tucked this weapon into the top of his trousers, so as to be held up by his belt.

During the course of cross-examining Crawford the Deputy District Attorney put the gun in similar fashion in the top of his trousers. Crawford's brief contends:

"* * * After he examined the defendant with reference to his placing the gun in his belt, the prosecutor went on to other unrelated testimony, but he continued to carry the gun in his belt, in the view of the jury. This was objected to by counsel for the defendant on at least two occasions during the next twelve pages of testimony which covered a period of approximately 20–25 minutes. The objections were overruled."

The only authority cited to put the trial judge in error is Campbell v. State, 19 Ala. App. 349, 97 So. 783, wherein under headnote 8 there is a general moralization as to the duty of prosecutors.

The opinion then continues (leading to affirmance):

"* * * This is primarily a question for the trial court, who has the advantage of having heard and seen everything incident to the trial, and unless it appears that the conclusions are clearly erroneous they will not be distributed on appeal. From the position of this court, aided only by the cold and meager recitals in the record, we cannot say that the trial court erred in refusing to grant the motion for new trial."

■ It is a familiar practice, even purveyed to the laity by Perry Mason via television, for lawyers in cross-examination to use demonstrative simulations of movements, positions of objects, the menaces of opponents, etc. Generally they are tolerated as part of the search for truth in a Common Law that has moved from formal deposing under oath to the sifting of cross-examination. Code 1940, T. 7, § 443.

We find no claim that the prosecutor deviated from the evidence already before the jury.

Perhaps the prosecutor kept the pistol too long in his belt, but no claim is made that his imitation contradicted or distorted the testimony. Without some misleading tendency as to his mannerism we can see no probable prejudice to a substantial right of Crawford when undisputedly Crawford had carried the weapon in this mode. Linnehan v. State, 120 Ala. 293, 25 So. 6.

## VIII

We have carefully considered the whole reach of the record, the testimony under § 10 of the Automatic Appeal Act (No. 249, June 24, 1943) and the remainder under Code 1940, T. 15, § 389, and conclude that the judgment below is due to be

Affirmed.

PRICE, P. J., and ALMON, J., concur.

2. This weapon was described as a .38 cal. five shot revolver denominated variantly as a "Rossi" or "Russi." It was found near Crawford when he was caught. Apparently Crawford was eager to claim this gun because a ballistics test showed the fatal bullet taken from Harris's brain came from another gun found under Brown.