The defendant was indicted and convicted for the unlawful possession of Pentazocine, Alabama Code 1975, Section 20-2-70, and for possession of a pistol after having been convicted of a crime of violence. Code Section 13A-11-72 (Amended 1977). He was sentenced as an habitual offender to life imprisonment.
 I
The defendant argues that remarks made by the trial judge to the jury encouraging them to reach a verdict were coercive and were made outside the presence of defendant's counsel.
 A.
The specific remarks the defendant finds objectionable are:
 "THE COURT: I am going to instruct you to commence deliberating with one instruction. There is a word called contumaciousness. How many of you know what that word means?
"(NO RESPONSES.)
 "THE COURT: Well knowing what it means is not necessary, just don't act that way . . . Contumaciousness means being stubborn, and practically to the extent that you are unreasonable."
These remarks represent a portion of the judge's instructions to the jury. These particular instructions were given after the jury had been deliberating for an unidentified portion of one day, had been allowed to separate for the night, and were ready to begin their deliberations the next morning. *Page 762 
Examining the judge's supplemental charge in the "whole context of its setting", we find that it is not coercive or threatening. Orr v. State, 40 Ala. App. 45, 54, 111 So.2d 627
(1958), affirmed, 269 Ala. 176, 111 So.2d 639 (1959). "No error is committed in supplemental instructions, including the `Allen' or `dynamite' charge, unless it is threatening or coercive in the language used." Lake v. State, 390 So.2d 1088,1092 (Ala.Cr.App.), cert. denied, 390 So.2d 1093 (Ala. 1980).
 B.
After the jury had returned its verdict and been dismissed, defense counsel made the following objection:
 "I also move for a mistrial on the grounds that certain statements were made to the jury outside of my presence. And it is my understanding that the jury was given the instruction not to be stubborn. They came back in less than 30 minutes and returned the guilty verdict to my client."
The trial judge denied this motion.
In a written "motion for a mistrial" defense counsel alleged "(t)hat after the jury had deliberated for approximately three (3) hours, certain remarks were made to the jury outside the presence of defendant's counsel and such remarks were prejudicial to the rights of the defendant." This allegation of error was not presented in the defendant's written motion for new trial. However, in arguing that motion defense counsel did "move for a new trial that certain remarks we(re) made to the jury outside, prejudicial to the rights of the defendant . . ."
"No communication, whatever, should take place between the judge and the jury after the cause has been submitted to them, unless in open Court with all the parties and their attorneys present." Donahoo v. State, 371 So.2d 75, 78-9 (Ala.Cr.App.), cert. denied, Ex parte Donahoo, 371 So.2d 79 (Ala. 1979).
There is nothing in the record, apart from the objections and motions of defense counsel, to support the defendant's allegation of error. "Assertions of counsel in an unverified motion for new trial are bare allegations and cannot be considered as evidence or proof of the facts alleged." Smith v.State, 364 So.2d 1, 14 (Ala.Cr.App. 1978). "A motion for a new trial must be heard and determined on the evidence submitted on that motion and on the evidence heard on the main trial, though not reintroduced." Taylor v. State, 222 Ala. 140, 141,131 So. 236 (1930). So far as this record discloses, no proof was offered in support of the motions for new trial or mistrial. Therefore, they were properly overruled. Crawford v. State,48 Ala. App. 325, 264 So.2d 554, cert. denied, 288 Ala. 686,264 So.2d 559 (1972); Walters v. State, 30 Ala. App. 547, 9 So.2d 32
(1942); Hart v. State, 28 Ala. App. 545, 190 So. 95, cert. denied, 238 Ala. 188, 190 So. 98 (1939). See also White v.State, 33 Ala. App. 92, 30 So.2d 466, cert. denied, 249 Ala. 158, 30 So.2d 468; Summers v. State, 19 Ala. App. 556, 99 So. 48
(1924). Since there is nothing in the record to show that the trial judge abused his discretion in refusing to declare a mistrial or grant a new trial, the action of the judge must be upheld.
 II
The defendant contends that he was subjected to an illegal arrest, search and seizure.
On the afternoon of March 22, 1981, Prichard Police Officer Perry Hollins stopped the defendant for driving with an expired license tag. He asked to see the defendant's driver's license and the defendant told him that he did not have a license. Officer Hollins then told the defendant that he "would have to place him under arrest for driving a vehicle without license, also, for having an expired tag on the car." Hollins asked the defendant to get out of the car. As the defendant was opening the door, Officer Hollins noticed the handle of a pistol "sticking up out" of the console between the front seats of the automobile. The officer read the defendant a portion of hisMiranda rights and had him get out of the car. *Page 763 
When Officer Hollins reached for the pistol he noticed an aspirin bottle on the floor under the driver's seat of the automobile. Officer Hollins testified:
 "I picked up the aspirin bottle as I was coming out of the vehicle. I was going to put it back into the car, but I noticed that when I opened the top, there was a cellophane inside of the aspirin bottle. At this point, I opened the cellophane and there was a blue tablet and a pink tablet."
* * * * * *
 "Well, actually after I picked up the revolver, I saw the bottle on the floor, and I was going to throw it into the ash tray or something, and once I picked it up, I saw that it only had one aspirin or something in it other than aspirins, well, just out of curiosity, I opened the bottle."
At trial Officer Hollins testified that, after the defendant told him that he did not have a permit for the pistol, he "opened the top of the bottle, and it was tin foil inside the bottle, which I opened the tin foil, which was a blue tablet and a beige tablet with a T-21 wrote on it. From my experience in the past, it looked like a Talwin tablet to me." On cross examination of Hollins by defense counsel, the following occurred:
"Q. Mr. Hollins, what type of bottle was this?
"A. I believe it was a Dristan bottle.
"Q. Dristan?
"A. Yes, small bottle. I'm not really sure . . .
"Q. Could you see through the bottle?
"A. No, I couldn't. That's why I opened the top.
"Q. Did you know what was in the bottle?
"A. No, I didn't. That's why I opened the top.
"Q. Why did you open the bottle?
"A. Out of curiosity.
"Q. Out of curiosity?
 "A. I opened the top. And then after I saw the tin foil, I really got curious."
The trial judge found that there was a lawful search and seizure incident to a lawful arrest apparently relying on NewYork v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768
(1981).
In New York v. Belton, the Supreme Court of the United States held:
 "Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
 "It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. United States v. Robinson, [414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427] supra; Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have . . .
 "It is true, of course, that these containers will sometimes be such that they could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested. However, in United States v. Robinson, supra, the Court rejected the argument that such a container — there a `crumpled up cigarette package' — located during a search of Robinson incident to his arrest could not be searched: `The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion *Page 764 
being lawful, a search incident to the arrest requires no additional justification.' Id., [414 U.S.] at 235, 94 S.Ct., at 476." Belton, 101 S.Ct. at 2864.
In Belton, the court defined "container":
 "`Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." Belton, 101 S.Ct. at 2864, n. 4.
Belton established a "bright line" to guide the actions of law enforcement officers. "The new rule provides that police may search the `passenger compartment' of an automobile, and any containers found there, incident to an arrest of someone who occupied the automobile just prior to the arrest." Comment,Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841,69 L.Ed.2d 744 and New York v. Belton: The Supreme Court Opens Car DoorsTo Container Searches, The American University Law Rev. 291, 310-11 (1982). "Belton does establish a `bright-line' rule allowing the search of any container found within the passenger compartment of an automobile when the occupant of the automobile is lawfully arrested." United States v. Rivera,654 F.2d 1048, 1053, n. 7 (5th Cir. 1981).
The Belton rule extends the scope of searches incident to arrest to include any containers found during the search, regardless of the probability that the container would hold a weapon or evidence. Fourth Amendment — Of Cars, Containers AndConfusion, 72 The Journal of Criminal Law and Criminology 1171, 1209 (1981). Belton authorizes "searches of everything within the passenger compartment even in the absence of independent probable cause, using the incident to arrest exception to the warrant requirement." L. Katz, Automobile Searches AndDiminished Expectations In The Warrant Clause, 19 American Criminal Law Rev. 557, 558 (1982). See also: Recent Decisions,Fourth Amendment: The Constitutional Scope Of WarrantlessAutomobile Searches, 57 Notre Dame Law. 435 (1981); W. LaFave, 2 Search And Seizure Section 7.1 at p. 136, 1982 Pocket Part (1978).
In conclusion, it should be noted that Belton, as is this case, is concerned with a search incident to arrest and not the "automobile exception" to the Fourth Amendment's warrant requirement. Compare United States v. Ross, ___ U.S. ___,102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
 III
The defendant argues that he was illegally arrested for minor traffic violations. His argument is based upon Alabama Code 1975, Section 32-1-4[1] providing *Page 765 
that a traffic violator may be allowed to sign his own bond and be released from custody. Mitchell v. State, 391 So.2d 1069
(Ala.Cr.App. 1980); Gaskin v. State, 338 So.2d 1041
(Ala.Cr.App. 1976).
The defendant admitted driving without a valid driver's license and with an expired tag so the arrest was justified and legal. Apparently, what the defendant objects to is his "custodial" arrest and, specifically, the fact that he was requested to get out of his automobile so he could be taken to the police station where Officer Hollins had a ticket book and there charged. Officer Hollins testified that he "did not have a ticket book, so the only thing (he) could do was take him in to the station and place him on the docket." In essence, what the defendant objects to is the procedure incident to, and following, his arrest for a motor vehicle law violation. Section 32-1-4 applies "(w)henever any person is arrested for a violation of any provisions of this title punishable as a misdemeanor. . . ."
Except for the exceptions provided by Section 32-1-4 (b), a person arrested for a misdemeanor traffic violation is not subject to further detention for that offense once the arresting officer has obtained the necessary information and given the motorist the "summons or notice" to appear.
Under the circumstances of this case, Section 32-1-4 was not violated. Before Officer Hollins saw the pistol in the defendant's automobile, he was only going to detain the defendant long enough to charge him with the traffic violations. Because the officer did not have a "ticket book" it would have been necessary to take the defendant to the police station to be "docketed". The defendant was stopped "almost directly in front of the police station." In arguing that Officer Hollins should have obtained a search warrant, defense counsel stated: "He was right in front of the Prichard Municipal Complex, which is where the Police Building is located, and it would have only taken him five minutes to get a warrant to search that vehicle."
In order to charge the defendant for the traffic violations, Officer Hollins had to use the uniform traffic ticket and complaint. Alabama Code 1975, Section 12-12-53. Since Officer Hollins did not have a "ticket book", he had to detain the defendant and take him into "actual" custody. This detention was reasonable. There is nothing to indicate that this was done as a ruse or subterfuge in order to justify the removal of the defendant from the automobile and excuse a subsequent search.
Although Section 32-1-4 generally forbids police officers from taking persons into custody for violation of minor traffic laws, "(a)s a matter of constitutional law, however, any person lawfully arrested for the pettiest misdemeanor may be temporarily placed in custody." Robbins v. California,453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), Justice Stevens dissenting. See also Gustafson v. Florida, 414 U.S. 260,94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973).
Additionally, we question whether this specific issue presented on appeal was properly and sufficiently raised in the trial court. There, the only objection on this issue was: "My first contention is that in the issuing of a traffic citation, you would not necessarily have to place the person that you — place him under arrest to issue a traffic citation, therefore, the arrest was illegal and the search and the seizure was illegal."
We have answered the arguments advanced by the defendant on appeal, and affirm the judgment of the circuit court.
AFFIRMED.
All Judges concur.
[1] "Section 32-1-4. Appearance upon arrest for misdemeanor.
 "(a) Whenever any person is arrested for a violation of any provisions of this title punishable as a misdemeanor, the arresting officer shall, unless otherwise provided in this section, take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice, and such person shall, if he so desire, have a right to an immediate hearing or a hearing within 24 hours at a convenient hour and such hearing to be before a magistrate within the county or city where such offense was committed. Such officer shall thereupon and upon the giving by such person of a sufficient written bond, approved by the arresting officer, to appear at such time and place, forthwith release him from custody.
 "Any person refusing to give such bond to appear shall be taken immediately by the arresting officer before the nearest or most accessible magistrate.
 "Any person who willfully violates his written bond to appear, given in accordance with this section, shall be guilty of a misdemeanor regardless of the disposition of the charge upon which he was originally arrested.
 "(b) The provisions of this section shall not apply to any person arrested and charged with an offense causing or contributing to an accident resulting in injury or death to any person nor to any person charged with driving while under the influence of intoxicating liquor or of narcotic or other drugs nor to any person whom the arresting officer shall have good cause to believe has committed any felony, and the arresting officer shall take such person forthwith before the nearest or most accessible magistrate." *Page 766