[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1363 
Appellant, John Pervie Morton, was convicted of possession of cocaine in violation of the Alabama Uniformed Controlled Substances Act. Sentence was six years and a fine of $1000 imposed. Issues concerning search and seizure are raised on appeal.
Morton, while driving along a highway, was clocked with radar by Officer William Weaver of the Opelika Police Department. Weaver determined that Morton was speeding. Morton stopped in the parking lot of a commercial business, then got out of his car. Weaver had arrested Morton two years earlier for cocaine charges and so recognized him once he pulled over (Morton had been found not guilty on that charge).
Weaver checked with his dispatcher and found that Morton's driver's license had been revoked, so he charged Morton with "speeding" and "driving while revoked." A two-man unit was called to the scene so that Morton and his automobile could be taken to the Opelika City Police Station because, as Weaver testified, "It's required by the City of Opelika that a bond be made on `Driving Revoked.'" One of the backup officers drove Weaver's patrol car and Morton to the station, while Weaver drove Morton's car. While enroute to the station, Weaver noticed a bank bag underneath the front seat. He also looked behind the car's sun visors.
Weaver took the bank bag out of the car, carried it into the station, and there removed its contents. Along with address books, bank books, and other papers, there were five small cellophane containers which held what Weaver believed to be *Page 1364 
cocaine. Morton was immediately arrested for possession of cocaine. Weaver called a narcotics detective and asked him to come to the station. Once at the station, the detective was shown the contents of the bank bag. Weaver and the detective then conducted a very thorough search of Morton's car, which the police characterized as an inventory search. A small amount of cocaine was found in a bottle found inside an armrest located in the middle of the seat. The material in the cellophane turned out not to be a controlled substance.
The question in this case is whether the police had the authority to impound Morton's vehicle. If the seizure was improper, the fruits of any subsequent search are due to be suppressed. An automobile may be impounded when it is reasonable under the circumstances or there is no reasonable alternative (Jones v. State, 407 So.2d 870 (Ala.Cr.App. 1981)), or under authority of statute.
The propriety of the impoundment is, of course, grounded on the propriety of the initial arrest. In the case sub judice, Morton was improperly placed under custodial arrest. The traffic violations charged against Morton are commonly known as "speeding" and "driving while revoked," which are both misdemeanors. See §§ 32-5A-8, 32-6-19, Code of Alabama 1975. In turn, § 32-1-4, Code of Alabama 1975, reads in part as follows:
 "(a) Whenever any person is arrested for a violation of any provision of this title [Title 32] punishable as a misdemeanor, the arresting officer shall, unless otherwise provided in this section, take the name and address of such person and the license number of his motor vehicle and issue a summons or otherwise notify him in writing to appear at a time and place to be specified in such summons or notice. . . . Such officer shall thereupon and upon the giving by such person of a sufficient written bond, approved by the arresting officer, to appear at such time and place, forthwith release him from custody. Any person refusing to give such bond to appear shall be taken immediately by the arresting officer before the nearest or most accessible magistrate. . . .
 "(c) Any officer violating any of the provisions of this section shall be guilty of misconduct in office and shall be subject to removal from office." (Emphasis ours.)
The clear import of this section is that the police have no authority to take a motorist into custody and then require him to go to the local stationhouse when that motorist has committed a misdemeanor traffic violation but is willing to sign the summons to court. This interpretation is supported byDaniels v. State, 416 So.2d 760, 765 (Ala.Cr.App. 1982), in which this court said, "Except for the exceptions provided by Section 32-1-4 (b), a person arrested for a misdemeanor traffic violation is not subject to further detention for that offense once the arresting officer has obtained the necessary information and given the motorist the `summons or notice' to appear." See also Gaskin v. State, 338 So.2d 1041 (Ala.Cr.App. 1976). This statute requires strict compliance by the arresting officer as is evidenced by the penalty provisions of subsection "c."
Without question, a person who is subject only to a non-custodial arrest may not have his property seized on the basis of that same arrest. Absent some extenuating circumstances, such a seizure would be unreasonable and in violation of the Fourth Amendment. The statutory language which sets out the penalty for driving with a revoked license is specific and unambiguous. There is no provision for the seizure of property when § 32-6-19 is violated. Additionally, since Morton should not have been taken into custody, there was no need for the police to "protect" the car by impounding it.
It was not illegal for Morton to possess or own the car simply because he did not have the proper identification; if it were otherwise, the police would be justified in taking the car from his front yard. *Page 1365 
The police may have felt justified in taking the car because of their suspicion that Morton was going to break the law sometime in the future by driving away in the car. Although this may have been a well founded suspicion on their part in Morton's case, the judiciary of this country does not sanction the use of pre-emptive seizures to thwart suspected future criminal activity. An individual finding himself stopped under these same circumstances cannot legally be placed under a custodial arrest, and, therefore, it is just as probable as not that the average law abiding citizen will make the proper arrangements for the care of his vehicle and it cannot be presumed that he will do otherwise.
Nor were the police justified in impounding the vehicle under color of authority of § 32-5A-139, Code of Alabama 1975, since it was legally parked upon private property, creating no safety risk to the public. It was not stolen, the driver was able to provide for its custody, and the driver was not required to be taken before a magistrate.
Lastly, it must be determined if the impoundment could be justified as reasonable under the circumstances. Jones, supra. It has been held that the police have an inherent authority to impound vehicles, aside from statutory authority based on what is called the community caretaking function. Cody v.Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973);South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092,49 L.Ed.2d 1000 (1976). That function was explained as follows:
 "In the interests of public safety . . . automobiles are frequently taken into police custody. . . . To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." 428 U.S. at 368-69, 96 S.Ct. at 3096-97.
In the instant case, it is clear that the vehicle was in no way a traffic hazard and its impoundment was outside the scope of the community caretaking function. In Drinkard v. State,584 S.W.2d 650 (Tenn. 1979), the driver's car was impounded after an arrest for drunken driving. The court said:
 "The guideline that has been persuasively applied in numerous cases, and with which we are in agreement, is that if the circumstances that bring the automobile to the attention of the police in the first place are such that the driver, even though arrested is able to make his or her own arrangements for the custody of the vehicle, or if the vehicle can be parked and locked without obstructing traffic or endangering the public, the police should permit the action to be taken rather than impound the car against the will of the driver and then search it. Just cause to arrest the driver is not, alone, enough; there must also be reasonable cause to take his vehicle into custody. The rule was succinctly expressed in State v. Bales, 15 Wn. App. 834, 552 P.2d 688 (1976), in which defendant was stopped for speeding and arrested on an outstanding warrant. His car was impounded despite his plea to have a friend pick up the vehicle within a few minutes and after giving police the friend's telephone number. The court stated:
 "`When a friend or relative is available to move a vehicle for defendant just arrested for a traffic charge, the arresting officer is not justified in calling for an impoundment absent other circumstances. . . . Impoundment of a citizen's vehicle following his or her arrest on a traffic charge is inappropriate when reasonable alternatives exist. To permit a subsequent warrantless *Page 1366 
inventory search to be accomplished thereby would be improper.'" 584 S.W.2d at 653.
Impoundment has also been justified on the grounds that it is necessary to protect the vehicle from damage and the police from liability. The Supreme Court of Washington in State v.Houser, 95 Wn.2d 143, 622 P.2d 1218, 1224 (1980), said:
 "[N]othing in the record indicates the officer believed that appellant's presence at the police station to post bond for the charges called for anything but a temporary absence. The officer could have left the car locked and parked where it was and if it had later become apparent that appellant would not be able to return for the car and that it could not be left safely on the street, the officer could have ordered impoundment at that time. It is unreasonable to impound a citizen's vehicle following his or her arrest when there is no probable cause to seize the car and where a reasonable alternative to impoundment exists."
Even when there is a possibility that the car will be damaged, the driver should be able to elect to take this chance rather than have it impounded. This presents no problems to police if the driver assumes responsibility for any damage. In the case of Gunn v. State, 336 So.2d 687 (Fla.App. 1976), the defendant, after arrest, asked the officer to allow him to call his mother so she could come get the car. The court said:
 ". . . the impounding and towing of an automobile and its concomitant inventory search is of questionable validity where the location of the automobile does not create a traffic hazard or nuisance and the owner operator chooses not to have his car impounded. The individual in custody should be advised of and given the choice of leaving the car in its location, contacting someone else to take charge of the car or having it impounded. An individual who is taken into custody ought not to have his vehicle impounded, inventoried and towed away under such circumstance where alternative steps can be taken to secure the vehicle and the individual is willing to accept the responsibility for the safekeeping of the contents of such vehicle." 336 So.2d at 689.
In the case sub judice, of course, the driver should not have been taken into custody and, therefore, any questions of liability to police or damage to the car should not have arisen. Even assuming proper custody of the defendant, there was no showing that the car was in any greater danger of being damaged than any other locked car left in a private parking lot.
In State v. Goodrich, 256 N.W.2d 506 (Minn. 1977), the defendant was arrested for driving under the influence after he pulled his car off the road and parked it at a service station. The court said:
 "[W]here police assumed custody of defendant's automobile for no legitimate purpose other than safekeeping, and where defendant had arranged for alternative means, not shown to be unreasonable, for the safeguarding of his property, impoundment of defendant's automobile was unreasonable and, therefore the concomitant inventory was an unreasonable search under the Fourth Amendment. . . . The sole remaining reason given in this case for impoundment and inventory . . . is the necessity of protecting the arrested individual's property from theft and the police from claims arising therefrom. But the defendant's assumption of responsibility for his property obviated that necessity in this case. . . . The State has not shown that the impoundment was a reasonable means of furthering a reasonable state purpose." 256 N.W.2d at 507, 511.
Although the many jurisdictions do not use uniform language or identical tests when resolving the issue of whether the impoundment of a vehicle was proper, the weight of authority makes it clear that the circumstances of each case must show that the impoundment was reasonable and necessary. See alsoDunkum v. State, 138 Ga. App. 321, 226 S.E.2d 133 (1976); Cityof Danville v. Dawson, 528 S.W.2d 687 (Ky.Cr.App. *Page 1367 
1975); State v. Thirdgill, 46 Or. App. 595, 613 P.2d 44 (1980); and Rodriquez v. State, 641 S.W.2d 955 (Tex.App. 1982).
In Jones, supra, the driver of the vehicle had run away, the passenger was incoherent, and the vehicle was blocking a private drive. This court found impoundment reasonable under the circumstances. In the present case, the driver should not have been placed under a custodial arrest; that fact vitiated any reason for impoundment and, for that reason, the results of the inventory search should have been suppressed.
For the foregoing reasons, the judgment of the lower court is reversed and the cause remanded.
REVERSED AND REMANDED.
All the Judges concur.