Michael E. Cannon, the appellant, pleaded guilty and was convicted of the unlawful possession of diazepam, codeine, and lorazepam, in violation of Ala. Code 1975, § 13A-12-212(a). He was sentenced to five years' imprisonment. In pleading guilty, the appellant preserved his right to appeal the circuit court's ruling on his motion to suppress. On this appeal from that conviction, the appellant argues that the inventory search of his vehicle was improper because the vehicle was parked on private property when it was impounded.
The appellant was arrested for driving under the influence shortly before 2:00 on the morning of May 5, 1990. When an officer of the Talladega Police Department first observed the appellant, he was driving on a public highway. By the time the officer had turned around and caught up with the appellant, he had parked his automobile in the parking area between a convenience store and a car lot.
The only issue raised on this appeal is "whether the police properly impounded the defendant's vehicle and properly conducted an inventory search when the vehicle was legally parked on private property." Appellant's brief at 6.
"[A]n inventory search cannot be valid unless the police initially obtained lawful custody of the vehicle." Annot., 48 A.L.R.3d 537, § 5(a) (1973). There is authority that tends to support the appellant's argument that the impoundment of his vehicle was improper because it was parked on "private" property. See W. LaFave, 3 Search and Seizure § 7.3(c) at p. 87, n. 55 (2d ed. 1987). However, in determining whether a vehicle has been properly *Page 1114 
impounded, we consider the "bright line" test of whether the vehicle was parked on public or private property inappropriate and over-simplified.
Section 32-5A-139(c), Ala. Code 1975, authorizes a police officer to impound any vehicle found "upon a highway" under certain circumstances. See also Ex parte Boyd, 542 So.2d 1276,1277 n. 2 (Ala. 1989), cert. denied, 493 U.S. 883,110 S.Ct. 219, 107 L.Ed.2d 172 (1989) (holding that the impoundment of the appellant's automobile "which was parked on the street in front of his house" was lawful). The parking lot in this case does not fall within the definition of "highway." See §32-1-1.1(23) ("HIGHWAY. The entire width between the boundary lines of every way publically maintained when any part thereof is open to the use of the public for purposes of vehicular travel"). However, "the police have an inherent authority to impound vehicles, aside from statutory authority based on what is called the community caretaking function." Morton v. State,452 So.2d 1361, 1365 (Ala.Cr.App. 1984).
In determining the legality of an impoundment of a vehicle, the totality of the circumstances must be considered. The single fact of where or how the vehicle was parked is not determinative.
 "[T]o have left the vehicle in the auction company's parking lot — a lot open to the public — could have subjected it to vandalism or theft. The fact that the vehicle was legally parked in a parking lot does not, in and of itself, require the finding that impoundment was unnecessary, see United States v. Staller, 616 F.2d 1284 (5th Cir. 1980), cert. denied, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980); United States v. Gravitt, 484 F.2d 375 (5th Cir. 1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974), and the court in [United States v.] Pappas [, 735 F.2d 1232
(10th Cir. 1984)] recognized this."
United States v. Kornegay, 885 F.2d 713, 716 (10th Cir. 1989), cert. denied, 495 U.S. 935, 110 S.Ct. 2179, 109 L.Ed.2d 508
(1990). In United States v. Staller, 616 F.2d 1284, 1290 (5th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89
(1980), the court found that the "taking custody of Saunder's car was a legitimate exercise of the arresting officer's community caretaking function." This conclusion was based, in part, on the finding that "[a]lthough Saunders' vehicle was lawfully parked and presented no apparent hazard to public safety, the officers were aware that a car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft." Id. (footnote omitted). See also United States v.Davis, 882 F.2d 1334, 1339 (8th Cir. 1989), cert. denied,494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990) ("The car [, which had been stopped in a high crime area,] was both a likely target for vandals and a potential source for subsequent dangerous and illegal activity"); Folly v. State,28 Ark. App. 98, 771 S.W.2d 306, 311 (1989) (where vehicle would have been left in a motel parking lot, "the likelihood that the vehicle would be vandalized if not taken into protective custody certainly existed").
The appellant's argument was also rejected in Johnson v.State, 553 N.E.2d 477, 479 (Ind. 1990):
 "Appellant makes the point that the automobile was parked on private property [the parking lot of an apartment building]; thus it should not have been impounded. Such is only true if the vehicle is parked at the home of the person being arrested. Here, . . . although the vehicle was on private property, it nevertheless was not property controlled by appellant and impoundment of the vehicle concurrently with appellant's arrest was proper."
The arresting officer testified that before taking the appellant to the police station for a breath test, she asked the appellant "if he had somebody that could come and pick up the car, and he said he didn't know of anybody. He was from Birmingham." She told the appellant that they could not "sit out here and wait for somebody from Birmingham to come. We will have to tow the vehicle. We called the wrecker service and had it towed to the [impound] lot." R. 26. The officer did not *Page 1115 
ask the appellant if he wanted to leave his vehicle in the parking lot.
Under Colorado v. Bertine, 479 U.S. 367, 373-76,107 S.Ct 738, 742-43, 93 L.Ed.2d 739 (1987), such an inquiry was not necessary:
 "[W]hile giving Bertine an opportunity to make alternative arrangements [other than police impoundment for the safekeeping of his vehicle] would undoubtedly have been possible, we said in [Illinois v.] Lafayette [, 462 U.S. 640, 108 S.Ct. 2605, 77 L.Ed.2d 65 (1983)]:
 " '[T]he real question is not what "could have been achieved," but whether the Fourth Amendment requires such steps.
". . . .
 " 'The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative "less intrusive" means.' Lafayette, 462 U.S. at 647, 103 S.Ct. at 2610 (emphasis in original).
 See Cady v. Dombrowski, [413 U.S. 433, 447, 93 S.Ct. 2523, 2530, 37 L.Ed.2d 706 (1973)]; United States v. Martinez-Fuerte, 428 U.S. 543, 557, n. 12, 96 S.Ct. 3074, 3082, n. 12, 49 L.Ed.2d 1116
(1976). We conclude that here, as in Lafayette, reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.
 "Bertine finally argues that the inventory search of his van was unconstitutional because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place. The Supreme Court of Colorado did not rely on this argument in reaching its conclusion, and we reject it. Nothing in [South Dakota v.] Opperman, [428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)] or Lafayette prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." (Footnotes omitted.)
See also 3 LaFave § 7.3(c) at 18-19 (Supp. 1992).
Here, as in Bertine, 479 U.S. at 376, 107 S.Ct. at 743, "[t]here was no showing that the police chose to impound . . . [the appellant's automobile] in order to investigate suspected criminal activity." Nor was there any showing that the police "acted in bad faith or for the sole purpose of investigation."Bertine, 479 U.S. at 372, 107 S.Ct. at 741.
This Court's opinion in Morton, supra, was written beforeBertine was decided. To the extent that Morton holds that a driver must be given an election on whether to have his vehicle impounded or left where parked, it is overruled.
In Morton, 452 So.2d at 1366, this Court observed: "Even assuming proper custody of the defendant, there was no showing that the car was in any greater danger of being damaged than any other locked car left in a private parking lot." In this case, the trial judge indicated that he would take judicial notice, if necessary, of the fact that if a car is stolen in Talladega County, it is usually stolen from "that [particular] car lot." R. 30.
 "It is important to recognize that the community caretaking function is 'totality divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' Cady [v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973)]. Thus, as long as such caretaking activities are warranted 'either in terms of state law or sound police procedure,' id. at 447, 93 S.Ct at 2531, they do not offend the fourth amendment Consequently, evidence which comes to light during the due execution of the caretaking function is ordinarily admissible at trial. See [United States v.] Lott, [870 F.2d 778, 781 (1st Cir. 1989)]. Such a result is consistent with the settled rule that searches and seizures made for routine administrative purposes are deemed noninvestigatory and, therefore, outside the warrant requirement and the probable *Page 1116 
cause standard. See Colorado v. Bertine, 479 U.S. 367, 371, 107 S.Ct. 738, 740, 93 L.Ed.2d 739
(1986); Opperman, 428 U.S. at 370 n. 5, 96 S.Ct. at 3097 n. 5. The imperatives of the fourth amendment are satisfied in connection with the performance of such noninvestigatory duties, including community caretaker tasks, so long as the procedure employed (and its implementation) is reasonable.
 "In community caretaking cases, as elsewhere, reasonableness has a protean quality. The term embodies a concept, not a constant. It cannot be usefully refined 'in order to evolve some detailed formula for judging cases.' Cady, 413 U.S. at 448, 93 S.Ct. at 2531; accord [United States v.] LaFrance, 879 F.2d [1] at 6 [1st Cir. 1989] ('what is reasonable in one type of situation may not be reasonable in [an]other'); cf. Sierra Club v. Secretary of the Army, 820 F.2d 513, 517 (1st Cir. 1987) (defining reasonableness as 'a mutable cloud, which is always and never the same') (quoting and paraphrasing Ralph Waldo Emerson). In this instance, then, to find whether the removal of defendant's car from the highway to the barracks was within the troopers' community caretaking function, 'we are obliged to look to all the facts and circumstances of this case in light of the principles set forth in [prior] decisions.' Opperman, 428 U.S. at 375, 96 S.Ct. at 3100."
United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 868,116 L.Ed.2d 774 (1992).
We find that the impoundment of the appellant's vehicle was reasonable under the particular circumstances of this case. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.