The appellant was charged with and was convicted of murder. The appellant was sentenced to 30 years' imprisonment.
The evidence shows the following: On October 12, 1990, in a mobile home in Russell County, Alabama, the appellant and the victim, Tommy Miller, had an argument. The appellant shot through a wall of the mobile home with one shotgun blast and hit Mr. Miller, and he died from complications associated with the wounds.
 I
The appellant contends that exhibit no. 27, a videocassette of the victim's statement, was improperly received into evidence as a dying declaration. First, the appellant contends that the trial court failed to enter a ruling that the statement on the videocassette constituted a dying declaration under Alabama law. Second, the appellant argues that because there was no indication of the trustworthiness of the victim's testimony, the videocassette was improperly received into evidence. Third, the appellant claims the trial court erred by failing to edit the impermissible portions from the videotape before publishing it to the jury.
A review of the record on appeal shows that the appellant's first claim is without merit. The trial court expressly held that the victim's statement was a dying declaration. The trial court entered the following into the record at trial:
 "THE COURT: Let me say one other thing for the record. The videotape exhibit *Page 424 
at the hospital of Thomas Miller was viewed by me, by consenting parties outside the presence of the jury, and it was my ruling that [sic] met the qualifications of the elements to the admissibility as a dying declaration. As I recall the voices on the video were at first Investigator Gene Exline. Excuse me, I am sorry. First Dr. Howard Weldon, the treating physician; then Investigator Gene Exline and Investigator Steve O'Stein."
(R. 263-264.)
The appellant next contends that the victim's testimony was improperly received into evidence because there was no indication of the trustworthiness of the declaration. In support of this contention, the appellant cites C. Gamble,McElroy's Alabama Evidence § 248.01(a) (4th ed. 1991), which states that a declaration that is elicited by way of leading questions is inadmissible if the surrounding circumstances impugn the veracity of the statement. In McHugh v. State,31 Ala. 317 (1858), the victim was unable to answer any questions. His friends who were present "explain[ed] the question and [gave] the answers." The only assertions the victim was able to make was "by nodding his head." Following the statement, the victim spoke few words and had to be aroused frequently. He also appeared to be in a stupor while the statement was being read to him.
It appears that the questions in McHugh were not designed to elicit yes or no answers. Also, the victim in that case appeared to be in a stupor. The court in McHugh found that had the record contained any evidence to convince it that the victim understood the language used in the statement, that he was able to detect any erroneous inferences as to the meaning that his friends might have expressed and that was embodied in the statement, it would hold the assertion's made by nodding his head to be sufficient. McHugh, 31 Ala. at 322.
In the instant case, even though the victim responded most often by nodding his head, there was evidence to support the veracity of the victim's statement. The majority of the questions were designed to elicit yes or no responses (e.g., "Did the defendant shoot you?"). In this case, there were several instances where the victim communicated to the questioning officers. For example, when asked whether he saw the defendant after the shooting, the victim lifted his left hand and moved it as if he were tracing a box, to indicate that he saw the defendant through his bedroom window after the shooting. Another time he used his hand to indicate that he had almost $6,000 on his person prior to the shooting. Furthermore, the evidence revealed that, in the present case, the physician withheld all pain medication prior to the time when the victim gave his statement. We find that the declaration of the victim was trustworthy and was properly admitted. See also O'Cain v.State, 586 So.2d 34 (Ala.Cr.App. 1991) (this court held that questions asked of a victim were insufficient to destroy the spontaneity of the responses).
Last, the appellant contends that the trial court erred because, he says, it failed to edit impermissible portions from the videotape before showing it to the jury. The appellant in his brief did not point to any specific portions of the victim's statement that he contends were erroneously received into evidence. Because the appellant failed to point out to the trial court the alleged impermissible questions and answers, this claim is not preserved for our review. Although the appellant made a general objection to the admission of the victim's statement, this was not sufficient to put the trial court on notice of the specific alleged improper questions and answers to which the appellant objects. "Only those grounds of objection presented to the trial court can serve as a basis for reversal of its actions. Harris v. State, 57 Ala. App. 558,329 So.2d 618 (1976)." Bland v. State, 395 So.2d 164, 168
(Ala.Crim.App. 1981). Furthermore, "the trial court must be apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the particular legal issue involved." Ward v. State, 376 So.2d 1112
(Ala.Crim.App.), cert. denied, 376 So.2d 1117 (Ala. 1979). *Page 425 
 II
The appellant contends that the trial court erred by prematurely providing the jury with an Allen v. United States,164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), charge during its deliberations. Specifically, he contends that: 1) the trial court gave the Allen charge before the jury had sufficient time to consider all the evidence; and 2) in giving the Allen
charge, the trial court failed to emphasize that each juror had the duty to adhere to his own individual belief in arriving at the verdict. The trial began on September 16, 1991, and was submitted to the jury on September 18, 1991. The jury resumed deliberations on September 19, 1991. Around 2:15 p.m. on September 19, 1991, the trial court gave the jury an Allen
charge. The Supreme Court and this court have held on numerous occasions that the "Allen" or "dynamite" charge is not error unless the language used is threatening or coercive. Jackson v.State, 375 So.2d 558, 560 (Ala.Cr.App. 1979); Lake v. State,390 So.2d 1088, 1092 (Ala.Cr.App), cert. denied, 390 So.2d 1093
(Ala. 1980), cert. denied, 450 U.S. 1004, 101 S.Ct. 1715,68 L.Ed.2d 207 (Ala. 1981); Daniels v. State, 416 So.2d 760, 762
(Ala.Cr.App. 1982).
In Daniels, the trial court gave supplemental instructions after the jury had deliberated for an unspecified part of one day, had been allowed to separate for the night, and was about to commence its deliberations the next morning. In this case, the jury had deliberated the equivalent of a full day before the trial judge supplemented its jury instructions. A review of the record reveals that the trial judge's language was in no way threatening or coercive.
The appellant argues that in giving its Allen charge the trial court failed to emphasize the juror's duty to adhere to their own beliefs in reaching a verdict. The transcript reveals that this claim is without merit. The trial court instructed the jurors not to abandon their honest beliefs:
 "THE COURT: Ladies and gentlemen, I apologize for interrupting your deliberations. I wanted to give these additional instructions or matters for your consideration. And I want to say this in addition to all of the other instructions that I have given you about what the law is in this case. As you know, it's an important case and if you should fail to reach a decision then this case is left open and undecided. There would be no reason to believe that the case can be tried any better by any side or by a — more thoroughly than it has already been tried, and there will be no reason to believe that the case could be submitted to a jury that would be more reasonable or more intelligent or more impartial than you people. I merely mentioned these matters now because some of these things may not have occurred to you.
 "By these instructions, I do not mean that any of you who favor a particular position should give up your honest belief about the weight of the evidence or about the effect of any evidence solely because another juror has some opinion about the evidence or about a particular verdict. I just mentioned this because of the importance at arriving at a verdict. What I would ask you to do would be to give respectful consideration to the views of everyone and if there are some differences of opinion about the evidence or effect of evidence and talk over these differences in a spirit of fairness and openness. If it's possible, then you may resolve differences and come to a common understanding as to what the outcome of this case should be.
 "Now, by me telling you these things, I am not in any way trying to put any pressure upon any of you.
Please consider these instructions along with all of the other instructions I've given you as to what the law is in this case. And by me telling you this doesn't mean that what I am saying now is any more important than any other instruction as to what the law is. Please let me stress that I am not trying to put any pressure upon you nor is anyone to arrive at any particular verdict whatsoever. I merely mentioned this in the situation, if it exists, that there may have been *Page 426 
some impasse in talking over evidence or a particular point. And that's all that I am doing at this time.
 "And again let me emphasize that I am not trying to tell you what to do, I am not trying to put any pressure upon any of you. If there is some situation where you've been unable to talk over a particular matter, if that is the situation, then please consider the other person's views, and I am not telling any of you to give up any of your honestly held beliefs or opinions about anything. I just merely mentioned that at this time for your consideration.
 "Now, with that again let me apologize for interrupting your duties and your deliberations and let me ask you to return to the jury room."
(Emphasis added.) (R. 492-495.)
We hold that the supplemental charge was not threatening or coercive in any way and that no error occurred in the trial court's supplemental instruction to the jury.
 III
The appellant contends that the evidence was insufficient to support an inference that the appellant intentionally murdered the victim, and, therefore, his judgment of acquittal should have been granted.
Viewing the evidence in the light most favorable to the State, we find that the trial court properly submitted the case to the jury. We find that there was sufficient evidence presented by the State to allow the jury to conclude that the appellant was guilty of the crime charged and that he intentionally caused the death of the victim. There was ample evidence from which the jury could infer the requisite element of intent. Questions of intent are normally jury questions.Loper v. State, 469 So.2d 707 (Ala.Crim.App. 1985); Page v.State, 487 So.2d 999 (Ala.Cr.App. 1986).
In the present case, the testimony revealed that a gunshot wound, inflicted by the appellant, caused the victim's death. In Cox v. State, 500 So.2d 1296 (Ala.Cr.App. 1986), this court held "it cannot be said that the appellant failed to perceive that the deceased's death might result if he was shot by the appellant." Cox, 500 So.2d at 1299. Here, there was evidence before the trial court that supported an inference that the defendant took out the shotgun in contemplation of using it on the victim. There was evidence that the appellant had challenged the victim to a fight. According to the testimony of the appellant's former girlfriend, Vicky Lynn Ray, after the appellant took the shotgun from a truck, the appellant told her that it would be best if she would take her children and leave.
Furthermore, the victim's statement revealed that the appellant had threatened to kill him just before to the shooting. The victim's statement also revealed that, following the shooting, the appellant took over $2,000 from him.
We find there was sufficient evidence presented to allow the jury to conclude beyond a reasonable doubt that the appellant was guilty of intentional murder. The jury could reasonably find that the evidence excluded every reasonable hypothesis except that of guilt. We find that the appellant's motion for judgment of acquittal was properly denied.
For the above stated reasons, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.